**Luis POLANCO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 96 Civ. 3462 (LBS).

United States District Court, S.D. New York.

July 24, 1996.

Luis Polanco, Petitioner, Milan, MI, pro se.

Mary Jo White, United States Attorney for the S.D. New York, New York City, Roman E. Darmer II, Assistant United States Attorney, for Respondent.

## MEMORANDUM DECISION

SAND, District Judge.

In this action, brought pursuant to 28 U.S.C. § 2255, Petitioner Luis Polanco ("Polanco") has moved to vacate his judgment, conviction, and sentence, and for release on bail, in light of recent clarification by the Supreme Court of what constitutes "use" of a firearm under 18 U.S.C. § 924(c), *see Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For the reasons stated herein, we deny Polanco's motions.

## BACKGROUND

The offense conduct behind Polanco's criminal conviction involved narcotics sales transpiring inside apartment # 14, 209 West 108th Street, New York, New York, which is located within one-thousand feet of P.S. 165, a public school. On June 28, 1989, a confidential informant working with the Drug Enforcement Agency ("DEA") was led into the apartment by Polanco to purchase cocaine; Polanco's co-defendant Ricardo Camacho ("Camacho") effected the sale.

On July 26, 1989, a second confidential informant, James Joy ("Joy"), also working with the DEA, went to apartment # 14 to purchase cocaine. Polanco, sitting in the liv-

ing room at the bar, measured out nine grams of cocaine and sold it to Joy, after negotiations over the price, for three-hundred dollars. Trial Tr., pp. 222–23. During the negotiations with Polanco, Joy observed an unidentified man, with a gun visible in the waistband of his pants, standing in the entrance to the living room. *Id.* The man with the gun, who had led Joy into the living room for the sale, was positioned so as to block the entrance to the hallway. *Id.* When Joy and Polanco started to argue over the price and quantity of the cocaine, the man moved from the living-room entrance toward Joy and started "jumping around" Joy. *Id.* at 227. Joy testified at trial that as a result of the visible presence of the gun, he felt unable to refuse Polanco's demands concerning the cost and amount of cocaine to be sold. *Id.*

On August 1, 1989, DEA Agents executed a search warrant on apartment # 14, 209 West 108th Street, New York, New York. The agents recovered 3.9 grams of cocaine and a loaded .38 caliber Titan handgun, both in plain view on top of the living-room bar. Trial Tr., pp. 105–106. At the time of the search, Polanco was present in the living room, a few feet from the bar on which the items were discovered. Polanco was then arrested in the apartment.

Trial began on February 5, 1990. On February 13, 1990, the jury found Polanco guilty of conspiracy to possess with intent to distribute cocaine (Count One of the Indictment; 21 U.S.C. § 846), distribution of cocaine within one-thousand feet of a school (Counts Four and Five; 21 U.S.C. §§ 812, 814(b)(1), (c), 841 (a)(1), 845 (a)), and use of a firearm during a drug transaction (Count Six; 18 U.S.C. § 924(c)). On June 18, 1990, this Court sentenced Polanco to concurrent 78–month terms on Counts One, Four, and Five and to the statutorily mandated consecutive five-year term on Count Six. A two-hundred-dollar special assessment and a six-year term of supervised release were also imposed. The Second Circuit affirmed the conviction and sentence on October 11, 1991.

On December 6, 1995, in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court clarified the term "use of a firearm" per 28 U.S.C. 924(c). In light of *Bailey,* Polanco has moved for reconsideration of his sentence, specifically the five years arising from his conviction on Count Six of the Indictment, which charged a violation of 18 U.S.C. § 924(c).

## DISCUSSION

Section 924(c) provides in relevant part:

(1) Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .

28 U.S.C. § 924(c). In *Bailey,* the Supreme Court explicitly rejected an interpretation of "use" that amounted to "mere possession of a firearm," —— U.S. at ——, 116 S.Ct. at 506 (citations omitted), as well as a definition that would encompass a concealed firearm intended for protection, *id.* at ——, 116 S.Ct. at 508—a gun that was simply accessible and proximate to the person committing a drug offense or to the drugs or drug proceeds, *id.* at ——, 116 S.Ct. at 506. Stressing that "the inert presence of a firearm, without more, is not enough to trigger ['use,' per] Section 924(c)(1)," *id.* at ——, 116 S.Ct. at 508, the Court held that for the statutory penalty to apply under the "use" prong, the "use" in question must amount to active employment, *id.* at ——, 116 S.Ct. at 509. ("[T]he Government must show that the defendant actively employed the firearm during and in relation to the predicate crime."). The examples cited in *Bailey* of "use" sufficient to sustain a conviction under Section 924(c) included "brandishing," "bartering," "striking with," "firing," and "attempting to fire" a firearm. *Id.* at ——, 116 S.Ct. at 508.

Justice O'Connor, writing for a unanimous court, additionally emphasized that alluding to or displaying a firearm would similarly satisfy the "use" prong. *Id.* The Court ruled that if a gun is mentioned or disclosed

by a defendant, it is actively employed, hence "used." *Id.* at —— ——, 116 S.Ct. at 507–508. In so finding, the Court acknowledged the coercive power of intimidation inherent in an offender's explicit reference to, or the visible presence of, a firearm. *Id.* at ——, 116 S.Ct. at 508. "A reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.* The Court thus plainly endorsed a threat-as-use reading of Section 924(c).

Such a reading takes on great significance in applying *Bailey* to the instant matter. We note first that *Bailey,* decided after both Polanco's trial and appeal, has retroactive effect. *See Rodriguez v. United States,* 933 F.Supp. 279, 280–81 (S.D.N.Y.1996); *United States v. Quinones,* No. 89 Cr. 291 (RWS), 1996 WL 351290, at \*2 (S.D.N.Y. June 26, 1996); *see also Paese v. United States,* 927 F.Supp. 667, 670–71 (S.D.N.Y.1996). The issues raised therein are thus properly before us here. We note further that the Government has conceded that the instructions given at Polanco's trial were inconsistent with *Bailey* as they failed to charge the jury on active employment. Government's Memorandum of Law in Opposition to Luis Polanco's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 and Application for Bail at 15.

■ However, it is well-settled that the mere fact of an error in a jury charge is not by itself adequate grounds for the grant of a Section 2255 application. Petitioner must establish that he has suffered a deprivation of constitutional rights, resulting from constitutional error at trial or sentence, want of jurisdiction in the sentencing court, or an error of law or fact that constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *see Napoli v. United States,* 32 F.3d 31, 35 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995). A faulty jury instruction, alone, does not rise to this level, particularly when the evidence suffices to establish guilt. *Ianniello v. United States,* 10 F.3d 59, 63 (2d Cir.1993).

■ Viewed in light of *Bailey,* the facts underlying the July 26, 1989, drug transaction support Polanco's conviction under Section 924(c). The prominent display of a firearm on the person of Polanco's co-conspirator, who was present throughout the negotiations between Joy and Polanco, evidences a conspiratorial intent to intimidate Joy. The handgun was plainly visible in the waistband of the co-conspirator's pants; Joy testified at trial that he observed the weapon, Trial Tr., p. 227. Joy also testified that, feeling threatened, he submitted to Polanco's demands, *id.;* the gun thus had its intended effect.

This "silent but obvious and forceful presence of" the firearm satisfies *Bailey*'s active-employment requirement. *Bailey,* —— U.S. at ——, 116 S.Ct. at 508; *see United States v. Giraldo,* 80 F.3d 667, 675 (2d Cir.1996) (declining to find "use" in light of fact that gun was not visible). Indeed its presence in apartment # 14 depicts a far more threatening scenario than the illustration offered in *Bailey* of a gun prominently placed on a table. *Bailey,* —— U.S. at ——, 116 S.Ct. at 508. Initially, Polanco's co-conspirator, bearing the .38 Titan, was positioned so as to block Joy's egress from the living room, where the cocaine sale was taking place. During the negotiations, he remained in the immediate vicinity; when an argument arose between Joy and Polanco, this unidentified man approached Joy and began "jumping around" him, Trial Tr., p. 227. More so than the stationary and inert presence of a gun on a table, the firearm here, effectively encroaching upon Joy's very freedom to leave, was clearly "calculated to bring about a change in [ ] circumstances," per *Bailey,* —— U.S. at ——, 116 S.Ct. at 508.

■ Analyzing the evidence under the "use" prong of Section 924(c), we conclude that the visible presence of the gun on the person of Polanco's *co-conspirator* constitutes active employment by *Polanco.* Whereas the facts may not suffice to extend the co-conspirator's Section 924(c) culpability to Polanco under the statute's "carry" prong, *see Giraldo,* 80 F.3d at 676 (requiring reason-

able foreseeability if extending responsibility under conspiracy theory, and specific knowledge and affirmative act relating to firearm if culpability is to be extended through aiding and abetting); *United States v. Medina*, 32 F.3d 40 (2d Cir.1994) (specific knowledge and participation required under aiding-and-abetting theory); *Pinkerton v. United States*, 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946) (reasonable foreseeability required under conspiracy theory); *see also United States v. Pimentel*, 83 F.3d 55, 58 (2d Cir.1996) (based on prior "training" and "routine," as well as own admission at trial, defendant "had reason to believe" firearm would be carried by co-conspirator), such an extension through "use" does not require the same particularized showing, *see United States v. Thomas*, 86 F.3d 647, 650–51 (7th Cir.1996) (ruling that active employment of handguns by co-conspirators would support defendants' "use" conviction, but remanding case as determination was one for jury, not court), at least not in the intimidation-as-use context. In the instant matter, Polanco' co-conspirator essentially served as the table referred to in *Bailey*—a vessel, albeit ambulatory, on which a firearm was visibly displayed. Just as the obvious presence of a firearm on a table would amount to "use" under *Bailey*, so the noticeable presence of the gun in the waistband of the co-conspirator's pants constitutes active employment by Polanco here.

■ The Government argues that the discovery, during the August 1, 1989, search, of the handgun atop the cocaine bar also suffices, by itself, to support Polanco's "use" conviction. We disagree. The mere fact that a firearm was visible on the bar at the time of the search, when no sale was underway, does not constitute intimidation. Indeed, in similar cases, the Government has conceded that the recovery of drugs and guns from an apartment during a lawful search fails, in light of *Bailey*, to sustain a conviction for "use." *See United States v. Hernandez*, 85 F.3d 1023, 1031–32 (2d Cir. 1996). The fact that the gun here was in plain view during execution of the warrant is of no moment.

## CONCLUSION

Therefore, as the evidence adduced at trial indicates that the gun was visibly displayed during the narcotics transaction, we find, per *Bailey*, that the record supports Polanco's conviction and sentence for "use" of a firearm under Section 924(c). Accordingly, the Court denies both Polanco's motion to vacate and the bail application. As we find that the petition presents a question of substance for appellate review, a certificate of appealability will issue.

SO ORDERED.