Jorge GARCIA, Wasang Thomas Mock, Raul Antonio Rodriguez, Petitioners,

v.

UNITED STATES of America, Respondent.

Nos. 97 CIV. 2962(PKL), 97 CIV. 2545(PKL) and 97 CIV. 2831(PKL).

No. S2 90 Cr. 890(PKL).

United States District Court, S.D. New York.

July 28, 1998.

Jorge Garcia, Lewisburg, PA, Pro se.

Wasang Thomas Mock, Lewisburg, PA, Pro se.

Cheryl Sturm, Westtown, PA, for Raul A. Rodriguez.

Mary Jo White, United States Attorney for the Southern District of New York, New York, NY, Kim A. Berger, James G. Cavoli, of counsel, for the U.S.

## OPINION AND ORDER

LEISURE, District Judge.

Petitioners *pro se* Jorge Garcia ("Garcia") and Wasang Thomas Mock ("Mock"), and petitioner Raul A. Rodriguez ("Rodriguez"), by counsel, are federal prisoners challenging their sentences pursuant to Title 28, United States Code ("U.S.C."), Section 2255. Though petitioners have filed separate motions, they assert both common and individual claims for relief. For the reasons stated below, the motions are denied.

## BACKGROUND

### A. *Procedural History*

The original Indictment in this action was filed on December 18, 1990. The Indictment charged petitioners Garcia and Rodriguez, as well as Pedro Valdez, with criminal acts stemming from their involvement in a narcotics distribution operation headquartered in Apartments 23 and 24 of a building on West 143rd Street in Manhattan ("Apartment 23" or "Apartment 24"). The Indictment consisted of four counts: (1) conspiracy to possess with intent to distribute more than fifty grams of "crack" cocaine and more than five kilograms of cocaine, from November 29, 1990, up to and including the date of the Indictment, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute approximately six kilograms of "crack" cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; (3) possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; (4) using and carrying a firearm, specifically a loaded .32 caliber handgun, during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§ 2, 924(c).

On March 20, 1991, pursuant to a cooperation agreement with the Government, Pedro Valdez pleaded guilty to Counts One and Four of the Indictment. In response to this plea, the Government filed a superseding Indictment, dated April 25, 1991, that amended

the charges in the original Indictment and deleted Valdez as a defendant (the "S1 Indictment"). Count One of the S1 Indictment extended the time period of the conspiracy back to December, 1988, and forward to April, 1991. Counts Two and Three charged defendants with possessing, respectively, approximately 2.9 kilograms of "crack" and 3.7 kilograms of cocaine. Count Four charged Rodriguez and Garcia with using and carrying a firearm, specifically a loaded .32 caliber handgun, during and in relation to a drug trafficking offense.

Trial on the S1 Indictment commenced on July 23, 1991, before the Honorable Mary Johnson Lowe (the "First Trial"). Though he was not indicted in the action, Mock testified on behalf of Garcia. Mock stated that neither Garcia nor Rodriguez manufactured or sold narcotics, and that Mock and Garcia had been partners in a legitimate auto parts business. On July 31, 1991, immediately following this testimony, but outside the presence of the jury, Mock was arrested. The warrant for Mock's arrest, dated May 24, 1991, was based on a sealed Complaint charging Mock with participation in the narcotics conspiracy.

The First Trial ended on August 2, 1991, in a mistrial. Eleven members of the jury voted to acquit the defendants, and one voted to convict.

On August 13, 1991, less than two weeks after the end of the First Trial, the Government filed a second superseding Indictment (the "S2 Indictment"). The S2 Indictment charged Mock, Rodriguez, and Garcia with (1) conspiracy to distribute and possess with intent to distribute more than fifty grams of "crack" cocaine, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute approximately 2.9 kilograms of "crack" cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; (3) possession with intent to distribute approximately 3.7 kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2; and (4) using and carrying a firearm, specifically a loaded .32 caliber handgun, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2, 924(c). In addition, the S2 Indictment charged Mock with two counts of perjury stemming from his testimony at the First Trial, in violation of 18 U.S.C. § 162.

Trial on the S2 Indictment commenced in this Court on January 6, 1992. The Government adduced substantial evidence that implicated petitioners in the manufacture and sale of narcotics, including 2.9 kilograms of "crack" cocaine seized from Apartment 24, a loaded .32 caliber handgun, extensive drug paraphernalia, and drug records in Mock's handwriting that reflected $232,787 in cocaine sales from a three-and-a-half-month period in 1990.

On January 24, 1992, the jury convicted Garcia and Rodriguez on Counts One through Four of the S2 Indictment, and Mock on Counts One through Six.

On July 23, 1992, this Court sentenced both Mock and Garcia to life imprisonment, plus a mandatory five-year sentence to be served consecutively. On January 5, 1993, this Court sentenced Rodriguez to 248 months imprisonment, plus a five-year term of supervised release.

## B.  *The Section 2255 Petitions*

Counsel for Rodriguez filed a petition pursuant to 28 U.S.C. § 2255 on April 10, 1997. Mock and Garcia filed *pro se* petitions on April 21, 1997, and April 24, 1997, respectively.

### 1.  *Petitioners' Common Claims*

In their several motions, petitioners raise two common claims. First, each petitioner argues that the holding of *Bailey v. United States*, 516 U.S. 137, ·116 S.Ct. 501, 133 L.Ed.2d 472 (1995), requires this Court to vacate his conviction on Count Four of the S2 Indictment, for using or carrying a firearm during and in connection with a drug trafficking offense. *See* 18 U.S.C. § 924(c). Petitioners contend that the evidence at the Second Trial did not prove "use" of a firearm as that term was defined in *Bailey*. Therefore, they argue, their convictions cannot stand. Rodriguez further claims that his firearm conviction is invalid under *United States v. Medina*, 32 F.3d 40 (2d Cir.1994). He contends that he did not know or have

reason to know that a gun was used or carried during and in connection with his narcotics activities, *see Medina,* 32 F.3d at 46, and that his conviction therefore cannot stand.

Each petitioner also asserts that he received ineffective assistance of counsel. Mock asserts that his counsel was ineffective due to his failure to object to allegedly improper perjury instructions, his failure to argue that the cocaine base seized from Apartment 24 was not "crack", but some other form of cocaine base, and his filing of a "lackadaisical" severance motion with the Court. Rodriguez contends that his counsel was ineffective due to his failure to file a motion for recusal and his failure to argue that the cocaine base seized from Apartment 24 was not "crack". Garcia argues that his counsel was ineffective due to his decision to call Mock as a witness at the First Trial, his failure to object to the Government's "constructive amendment" of the Indictments, and his failure to cross-examine Valdez properly.

### 2. *Petitioners' Individual Claims*

Petitioners also assert several individual claims. Mock contends that the Court should·vacate his conviction because (1) the Court's perjury instructions were improper under *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); (2) "prejudice" from these allegedly improper instructions "spilled over" into the narcotics and firearms Counts of the S2 Indictment; (3) joinder of the perjury Counts with the narcotics and firearm Counts of the S2 Indictment was prejudicial; and (4) the Court's conspiracy instructions contained improper "judicial rhetoric".

Rodriguez claims that (1) the Court's "improper" instructions on the § 924(c) Count of

the S2 Indictment prejudicially "spilled over" into the narcotics and firearm Counts; (2) the Court improperly applied the enhanced "crack" sentencing guidelines of 18 U.S.C. § 841 and U.S.S.G. § 2D1.1; (3) the Court unconstitutionally deprived him of his right to represent himself; and (4) the Court should have recused itself because of bias.

Garcia argues that (1) the Government constructively amended the Indictments in this action; (2) the Government acted vindictively in so amending the Indictments; (3) the Court gave improper instructions to the jury on the amount and nature of narcotics introduced at the Second Trial; and (4) the Government withheld exculpatory evidence from the defense.

### DISCUSSION

### I. *Timeliness of the Petitions*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. No. 104–132, 110 Stat. 1214 (Codified at 28 U.S.C. § 2255(1)–(4) (Apr. 24, 1996)). The AEDPA established a one-year period of limitations for the filing of habeas corpus petitions pursuant to 28 U.S.C. § 2255.[1] *See, e.g., Rodriguez v. Artuz,* 990 F.Supp. 275, 283 (S.D.N.Y. 1998). With respect to petitions filed by prisoners whose convictions became final before the enactment of the AEDPA, the United States Court of Appeals for the Second Circuit has suggested that the limitations period may be less than one full year. *See Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997)(stating that "where a state prisoner has had several years to contemplate bringing a federal habeas corpus petition, [there is] no need to accord a full year after the effective date of the AEDPA.").[2] In a recent

---

1. The relevant clause imposes a limitations period beginning from the "latest of (1) the date on which the judgment of conviction [became] final [and] (2) the date on which the impediment to making [the] motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action." 28 U.S.C. § 2255(1),(2) (1996).

2. *Peterson* concerned a petition brought pursuant to 28 U.S.C. § 2254, *see Peterson,* 107 F.3d at 92, while the instant case concerns petitions brought pursuant to 28 U.S.C. § 2255. Section 2254 provides a federal court remedy for state prisoners, while § 2255 provides a federal court remedy for federal prisoners. However, the Second Circuit has made clear that the § 2254 analysis of *Peterson* is applicable to § 2255 petitions. *See Lozada v. United States,* 107 F.3d 1011, 1013 (2d Cir.1997)(analyzing certificate of appealability

case, however, the Second Circuit dismissed this language as dictum and held that all petitions filed within one year of the effective date of the AEDPA are timely. *See Mickens v. United States,* 148 F.3d 145 (2d Cir.1998). The *Mickens* Court stated that "the language of *Peterson v. Demskie,* 107 F.3d 92, suggesting that the grace period [for prisoners convicted before the enactment of AEDPA] might be less than one year after AEDPA's effective date ... was dictum .... We hold, therefore, that the limitations period prescribed by § 105 of AEDPA does not bar a § 2255 motion filed within one year of the effective date of the Act." *Mickens* at 148. Under *Peterson,* the majority of District Courts in the Southern District of New York have barred the petitions of prisoners whose convictions became final before the enactment of the AEDPA, when those petitions were filed nearly a year after the effective date of the Act. *See, e.g., Howard v. Lacy,* No. 97 Civ. 2286, 1997 WL 749390, at *3 (S.D.N.Y. Dec.4, 1997)(finding petition untimely when filed 340 days after the enactment of AEDPA and eleven years after petitioner's conviction became final). However, in light of *Mickens,* this Court cannot so hold in the instant matter. The Court finds that since petitioners' motions were filed before the April 24, 1997, deadline of the AEDPA, they are not time barred.

## II. *General Standards for Judgment of § 2255 Petitions*

■ Collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which results in a complete miscarriage of justice.'" *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995)(quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). A petitioner may not use a § 2255 motion to "'relitigate questions that were raised and considered on direct appeal.'" *Riascos–Prado v. United States,* 66 F.3d 30, 33 (2d Cir.1995)(quoting *Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir.1992)). Moreover, a

petitioner who has failed to raise an issue on direct appeal may not do so in a § 2255 petition. *See Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992)("failure to raise a claim on direct appeal is itself a default").

■ Significantly, a petitioner may overcome a procedural default by showing "cause and prejudice"; he must show cause for not having raised a particular claim on appeal and must demonstrate that the failure to raise that claim actually prejudiced his case. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also Campino v. United States,* 968 F.2d 187, 189 (2d Cir.1992). A petitioner who cannot demonstrate cause and prejudice may nonetheless be heard if he can show that failure to hear his claim would lead to a "fundamental miscarriage of justice". *See Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

## III. *Procedurally Defaulted Claims*

■ Petitioners assert a variety of claims not raised on direct appeal. They show no cause for their failure to raise these claims, and no prejudice resulting from the Court's alleged errors. Petitioners also do not show that a "fundamental miscarriage of justice" would result from the Court's refusal to hear their claims. Accordingly, the claims are procedurally defaulted and petitioners are barred from bringing them in a collateral attack.

Mock argues that the joinder of the perjury Counts with the narcotics and firearm Counts of the S2 Indictment was prejudicial, and that the Court's conspiracy instructions contained undue "judicial rhetoric". Mock did not raise either of these claims on direct appeal. He has not shown cause for failing to do so, nor prejudice resulting from the alleged errors. Accordingly, he is barred from bringing these claims in his § 2255 petition.

Rodriguez argues that the Government failed to prove that the cocaine base seized from Apartment 24 was "crack", and that,

under both § 2254 and § 2255); *see also Massaro v. United States,* Nos. S1 92 CR. 529, 97 Civ. 2971, 1998 WL 241625, at *1 (S.D.N.Y. May 12, 1998) (applying *Peterson* to a petition brought pursuant to § 2255).

therefore, the Court's application of the enhanced sentencing guidelines of 18 U.S.C. § 841 and U.S.S.G. § 2D1.1 was improper. He also argues that the Court violated his Sixth Amendment right to represent himself. Rodriguez did not raise any of these claims on direct appeal. He has shown no cause for failing to do so, and no prejudice resulting from the Court's alleged errors. Thus, he may not bring these claims in his § 2255 petition.

■ Rodriguez also claims that the Court should have recused itself due to bias. While Rodriguez raised this claim on direct appeal, the Second Circuit summarily rejected it. The Court stated that "appellants raise a number of ... issues, none of which warrant further discussion. These include the appellants' claim[ ] that ... the district court improperly evidenced favoritism to the Government." *United States v. Valdez*, 16 F.3d 1324, 1333 (2d Cir.1994). Since the Second Circuit considered and rejected Rodriguez's recusal claim on direct appeal, he may not relitigate it in his § 2255 petition.

Garcia raises each of his individual claims for the first time in his § 2255 petition. He argues that (1) the Government constructively amended the Indictments in this action; (2) the Government acted vindictively in so amending the Indictments; (3) the Court gave improper instructions to the jury on the nature and amount of narcotics introduced at the Second Trial; and (4) the Government withheld exculpatory evidence from the defense. As noted, Garcia did not raise any of these claims on direct appeal. He has not shown cause for failing to do so, nor prejudice resulting from the Court's alleged errors. Accordingly, Garcia's claims are procedurally defaulted and he is barred from bringing them in his § 2255 petition.

## IV. *The Bailey Claims*

■ Each petitioner contends that, in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Court must vacate his conviction on the § 924(c) count of the S2 Indictment. Section 924(c) provides for a mandatory five-year term of imprisonment for any individual who "during and in relation to any ... drug trafficking

crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm." 18 U.S.C. § 924(c). Prior to *Bailey*, the law in this Circuit did not require the Government to prove "active employment" of a firearm in order to prove "use" of that firearm for purposes of § 924(c). Instead, proof that an individual "possess[ed] ... a gun under circumstances where the weapon is so placed as to be an integral part of the predicate offense" was sufficient. *United States v. Santos*, 64 F.3d 41, 45 (2d Cir.1995)(quoting *United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989)), *judgment vacated in light of Bailey*, 516 U.S. 1156, 116 S.Ct. 1038, 134 L.Ed.2d 186, *conviction vacated on remand*, 84 F.3d 43 (2d Cir.), *judgment modified on rehearing*, 95 F.3d 116 (2d Cir.1996). In *Bailey*, the Supreme Court reversed this rule, holding that to satisfy the "use" prong of § 924(c) the Government must prove "active employment of the firearm by the defendant." *Bailey*, 516 U.S. at 144, 116 S.Ct. 501. Such "active employment" includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire a firearm." *Id.* at 148, 116 S.Ct. 501.

Petitioners contend that the evidence at the Second Trial was insufficient to prove "use" of a firearm as defined in *Bailey*. They argue that since *Bailey* is applicable retroactively, *see United States v. Canady*, 126 F.3d 352, 356 n. 1 (2d Cir.1997), the Court must vacate their convictions on the § 924(c) Count of the Indictment. This claim is without merit.

In *Bousley v. United States*, —— U.S. ——, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court held that the § 2255 petition of a prisoner who had pleaded guilty to "using" a firearm under § 924(c) was procedurally defaulted. *See Bousley*, —— U.S. at ——, 118 S.Ct. at 1611. Like petitioners in the instant action, Bousley argued on collateral attack that he did not "use" a firearm within the meaning of *Bailey*. He claimed that he did not challenge his plea on direct appeal because *Bailey* had not yet been decided at that time. The Court nevertheless declined to hear Bousley's claim, holding that

neither the novelty of the claim, nor its apparent futility at the time of Bousley's appeal, constituted "cause" that could overcome the bar to collateral review. The Court noted that at the time of Bousley's appeal, "the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere 'possession.'" *Id.* (citing *United States v. Cooper,* 942 F.2d 1200, 1207 (7th Cir.1991)(appeal from plea of guilty to "use" of a firearm in violation of § 924(c)(1)), *cert. denied,* 503 U.S. 923, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992)). Moreover, the Court reasoned that the "futility [of a particular challenge] cannot constitute cause if it means simply that a claim was unacceptable to a particular court at a particular time." *Id.* (quoting *Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 71 L.Ed.2d 783 N.35 (1982)).

Since the Court found that Bousley's claim was procedurally defaulted, it remanded his petition to the trial court for review of his "actual innocence". "Actual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). In establishing "actual innocence", a petitioner must demonstrate that, "'in light of all the evidence'", "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L.Rev. 142, 160 (1970)). Notably, "the Government 'is not limited to the existing record to rebut any showing that petitioner might make. Rather the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy ...'" *Bousley,* 118 S.Ct. at 1611.

■ Like Bousley, petitioners in the instant matter did not challenge their § 924(c) convictions on direct appeal. As noted, this failure creates a procedural default that is not overcome by the fact that *Bailey* was not decided until after petitioners' appeal. Petitioners' claims thus are barred from collateral attack. Accordingly, the Court must review their § 924(c) convictions for "actual innocence".

Petitioners fail to satisfy the strict requirements of this standard. Count Four of the S2 Indictment explicitly charged that petitioners "... knowingly did use *and carry* a firearm ...." (emphasis supplied). Since the S2 Indictment charged petitioners with both using *and* carrying a firearm, they must prove that they are innocent of both acts in order to show that they are "actually innocent" of violating § 924(c). *See United States v. Schiff,* 801 F.2d 108, 114 (2d Cir.1986)(Convictions on indictments worded in the conjunctive form, charging violations of statutes worded in the disjunctive form, can be supported by proof of either means of violation)(quoting *United States v. Cioffi,* 487 F.2d 492, 499 (2d Cir.1973)). Petitioners make no such showing. Accordingly, the Court must uphold their convictions on Count Four of the S2 Indictment.

■ The Court instructed the jury at the Second Trial that it could convict petitioners of the § 924(c) Count of the S2 Indictment in either of two ways. First, the jury could determine that a particular petitioner actually carried a firearm in connection with his narcotics activities. Second, the jury could determine that a particular petitioner satisfied the requirements for constructive liability under *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Under *Pinkerton,* a jury may convict a conspirator of an offense committed by a co-conspirator, if the offense was committed in furtherance of the conspiracy, and was a reasonably foreseeable consequence of the conspiratorial agreement. *See Pinkerton,* 328 U.S. at 646–47, 66 S.Ct. 1180. The Second Circuit has specified in this regard that a defendant violates the "carry" prong of § 924(c) on a *Pinkerton* theory of liability if "a firearm was carried by, or within the reach of ..." a co-conspirator during a predicate drug offense. *United States v. Giraldo,* 80 F.3d 667, 676 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 135, 136 L.Ed.2d 83 (1996).

■ Ample proof allowed the jury at the Second trial to conclude that Mock actually

carried a firearm in violation of § 924(c). Evidence revealed that Mock exchanged cocaine for a .32 caliber handgun in Apartment 24, that he carried that handgun into Apartment 23, that he inspected the gun to ensure that it was in working order, and that he periodically unloaded and reloaded the gun in connection with his narcotics activities. This evidence clearly permitted the jury to conclude that Mock carried the .32 caliber handgun noted in the S2 Indictment. Accordingly, his conviction on the § 924(c) Count of the S2 Indictment must stand.

■ Substantial evidence allowed the jury to convict Garcia of carrying a gun on a *Pinkerton* theory of liability. The Record reveals that Mock showed Garcia the .32 caliber handgun, and that Garcia expressed satisfaction that the group had procured a means with which to protect its operation. This evidence amply allowed the jury to conclude that Garcia either knew, or foresaw, that a gun was carried in connection with his narcotics activities. Accordingly, his conviction on the § 924(c) Count of the S2 Indictment must stand.

■ Substantial evidence also allowed the jury to convict Rodriguez of carrying a gun on a *Pinkerton* theory of liability. The Record establishes that Rodriguez was a member of the narcotics conspiracy from its inception in 1986, that he stored cocaine in his apartment on Bailey Avenue in the Bronx, that he transported that cocaine to Apartments 23 and 24 as needed, that he sold narcotics directly to customers, and that he prepared narcotics for sale. The record also reveals that Valdez acted as an armed lookout during many of these transactions. This evidence clearly allowed the jury to conclude that Rodriguez knew, or foresaw, that a gun was carried in connection with his narcotics activities. Accordingly, his conviction on the § 924(c) Count of the S2 Indictment must stand.

Rodriguez's *Medina* claim is completely inapposite. Rodriguez was not convicted of aiding and abetting a § 924(c) violation, as was the defendant in *Medina*. See *Medina* 32 F.3d at 46. Instead, Rodriguez was convicted of violating the terms of § 924(c) himself, on a *Pinkerton* theory of constructive liability. The *Medina* rule that a defendant cannot aid or abet a § 924(c) violation without knowing or having reason to know that a firearm is being carried during and in connection with his narcotics activities is of no avail to Rodriguez. Quite simply, Rodriguez was neither charged with nor convicted of aiding and abetting a § 924(c) violation.

## V. Petitioners' Remaining Claims

■ Mock raises two individual claims not barred by procedural default. Both are meritless. Mock first argues that this Court's perjury instructions were improper under *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Prior to *Gaudin*, Second Circuit law mandated that the element of materiality in a perjury charge was a matter of law for the court to decide. See, e.g., *United States v. Gribben*, 984 F.2d 47, 50 (2d Cir.1993). In *Gaudin*, the Supreme Court reversed this rule, holding that the jury, rather than the judge, must determine this issue. See *Gaudin*, 515 U.S. at 522, 115 S.Ct. 2310. However, because *Gaudin* was not decided until after petitioners' trial, however, the Court's instructions on the perjury counts of the S2 Indictment were proper under existing law. Since the Second Circuit has mandated that *Gaudin* is not applicable retroactively, see *Bilzerian v. United States*, 127 F.3d 237, 240–41 (2d Cir. 1997), Mock's conviction on the perjury Counts of the S2 Indictment must stand.

■ Mock next argues that the Court's "improper" perjury instructions prejudicially "spilled over" into the narcotics and firearm Counts of the S2 Indictment. This claim is meritless. The Court's instructions on the perjury charges could not have prejudicially spilled over into the other charges of the Indictment since they were not improper.[3]

---

**3.** Even if the Court's instructions on the perjury charge had been improper, they could not have prejudicially "spilled over" into the other charges of the S2 Indictment. The Court's determination that Mock's statements were material had nothing to do with whether they were false. In fact, the Court explicitly instructed the jury that the element of falsity was a question of fact for the jury to decide. The jury plainly could have determined that Mock's statements were

██ Rodriguez raises one individual claim that is not barred by procedural default. He contends that the Court's "improper" instructions on the "use" prong of the § 924 Count prejudicially "spilled over" into the narcotics Counts of the S2 Indictment. This claim is devoid of merit. As noted, *supra*, the Court's instructions on the § 924(c) Count were correct under existing law. Moreover, the Court's instructions properly allowed the jury to convict Rodriguez of "carrying" a gun on a *Pinkerton* theory of liability. Accordingly, any "error" in the "use" instruction was harmless. *See United States v. Pimentel*, 83 F.3d 55, 59–60 (2d Cir.1996) (holding that court's improper "use" instruction was harmless error where "carry" charge was correct and evidence sufficed to support conviction on "carry" charge). Since the Court's instructions on the § 924(c) Count were proper, they could not have prejudicially spilled over into the narcotics Counts of the S2 Indictment. Moreover, jury instructions rendered erroneous by a subsequent change in the law almost never justify collateral relief where the evidence is otherwise sufficient to satisfy the court that the error was harmless. *See Polanco v. United States*, 935 F.Supp. 372, 375 (S.D.N.Y.), *aff'd* 112 F.3d 505, 1997 WL 196440 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2529, 138 L.Ed.2d 1029 (1997); *see also Peck v. United States*, 106 F.3d 450, 457 (2d Cir.1997) (dismissing collateral attack because error in jury instruction was harmless in light of evidence introduced at trial). Evidence at the Second Trial clearly implicated Rodriguez in the narcotics conspiracy and amply satisfies this Court that any "error" in the "use" instruction of the § 924(c) Count was harmless. Thus, Rodriguez's claim on this issue must fail.

As noted above, all of Garcia's individual claims are barred by procedural default.

## VI. *The Ineffective Assistance of Counsel Claims*

### A. *Legal Standard*

██ All three petitioners claim that they received ineffective assistance of coun-

sel. In considering such claims on collateral attack, the Court may bypass both the "cause and prejudice" and "fundamental miscarriage of justice" standards. The Second Circuit has recognized that a lawyer's ineffective representation may itself have compromised a petitioner's ability to raise a particular claim on appeal. *See Billy–Eko v. United States*, 8 F.3d 111, 114 (2d Cir.1993); *see also Ciak v. United States*, 59 F.3d 296, 303 (2d Cir.1995). The Court has further recognized that since evidence from outside the record is often necessary to review the effectiveness of counsel, claims of ineffective representation are best brought before the trial court in a § 2255 petition. *See Billy Eko*, 8 F.3d at 114. Accordingly, the failure to allege ineffective assistance of counsel on direct appeal does not raise a procedural bar to collateral review. *See id.*

██ The Supreme Court has stated that in order to show ineffective assistance of counsel, a defendant must prove (1) that counsel's performance was deficient in that counsel made errors so serious as to not function as the "counsel" guaranteed defendants by the Sixth Amendment to the United States Constitution, and (2) that counsel's deficient performance actually prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983).

██ To satisfy the first prong of this test, a defendant must show that counsel's performance fell below "an objective standard of reasonableness under prevailing professional norms." *See id.* at 668, 104 S.Ct. 2052; *see also United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir.1995). In passing upon this issue, a Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690,

material but true. Thus, the Court's determination that Mock's statements were material could not have affected the jury's determination of

Mock's guilt on the underlying narcotics and firearm charges.

104 S.Ct. 2052; *see also Kirsh,* 54 F.3d at 1071. A court evaluating counsel's performance must do so from counsel's perspective at the time of the alleged error and in light of the circumstances. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see also Kimmelman v. Morrison,* 477 U.S. 365, 380, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In so doing, the reviewing court must make every effort "to eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Once a defendant has proven that counsel's performance was deficient, he must prove that counsel's errors actually prejudiced his case. To prove actual prejudice, a defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Kimmelman,* 477 U.S. at 381, 106 S.Ct. 2574. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### B. *Mock's Claims*

Mock argues that his counsel was ineffective for failing to object to the Court's perjury instructions, for failing to argue that the narcotics introduced at the Second Trial were not "crack", but some other form of cocaine base, and for filing a "lackadaisical" severance motion with the Court.

■ Counsel's failure to object to the Court's perjury instructions did not constitute ineffective assistance of counsel because *Gaudin,* the basis upon which counsel would have objected, was not decided until June 19, 1995, nearly three and a half years after the Second Trial. An attorney's assistance does not fall below an objective standard of reasonableness when he fails to make an argument that conflicts with existing law. "It is well established that 'reasonably effective representation cannot and does not include a requirement to make arguments based on a prediction of how the law will develop.'" *Clark v. Moran,* 942 F.2d 24, 33 (1st Cir.1991)(quoting *Elledge v. Dugger,* 823 F.2d 1439, 1443 (11th Cir.1987)).

■ Mock offers no support for his contention that counsel filed a "lackadaisical" severance motion; Mock's counsel filed the motion and the Court carefully considered the issue. Moreover, there clearly is nothing inherently prejudicial in the joinder of perjury charges with substantive-offense charges. *See United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.1984). The *Potamitis* Court stated, "The law of this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where ... the false declarations concern the substantive offenses." *Id.* The instant matter provides just such a scenario. Mock's false declarations at the First Trial directly concerned the narcotics and firearm offenses charges of S2 Indictment. Joinder of the perjury counts with the substantive-offense counts was therefore proper. Accordingly, Mock's claim on this issue must fail.

■ The failure of Mock's counsel to argue that the substance seized from Apartment 24 was not "crack", but some other form of cocaine base, also does not constitute ineffective assistance of counsel. Ample evidence at the Second Trial established that the substance at issue was "crack". Where the evidence at trial supports such a conclusion, "The failure of ... counsel to dispute whether the drug involved in the conspiracy was crack cocaine ... is not ineffective assistance of counsel." *Brown v. United States,* 1998 WL 30273 at *4 (S.D.N.Y. Jan.28, 1998). Moreover, when this Court sentenced Mock late in 1992, the Government was not yet required to prove that a particular substance was "crack" in order for the Court to apply the enhanced sentencing provisions of 18 U.S.C. § 841 and U.S.S.G. § 2D1.1. At the time of the Second Trial, Second Circuit law clearly mandated that District Courts must apply § 841 to all forms of "cocaine base". *See United States v. Jackson,* 968 F.2d 158, 162 (2d Cir.1992)(declining to equate the broad term "cocaine base" in § 841 with the narrower term of "crack"). Only in a November, 1993, amendment to § 2D1.1 ("Amendment 487") did Congress explicitly mandate that courts were apply the enhanced sentencing provisions solely to co-

caine base in the form of "crack".[4] Since Amendment 487 was not in force at the time of the Second Trial, the claim that the cocaine base seized from Apartment 24 was not "crack" would have had no effect on the application of the guidelines. Accordingly, Mock's counsel was not ineffective for failing to so argue.[5] In sum, Mock's claims of ineffective assistance of counsel must fail.

### C. *Rodriguez's Claims*

Rodriguez claims that his counsel's failure to file a recusal motion constituted ineffective representation. This claim is baseless. In order to establish ineffective assistance of counsel for the failure to file a motion, a petitioner must (1) show that the motion was meritorious, and (2) demonstrate a reasonable probability that the verdict would have been different had the motion been successful. *See United States v. Matos,* 905 F.2d 30, 32 (2d Cir.1990). Rodriguez clearly fails to satisfy this strict standard. In *Valdez,* the Second Circuit stated that "appellants raise a number of . . . substantive issues, none of which warrant further discussion. These include[ ] appellants' claims that . . . the district court improperly evidenced favoritism to the Government." *Valdez,* 16 F.3d at 1333. In light of this treatment, Rodriguez simply cannot claim that the proposed recusal motion would have been meritorious. Accordingly, his ineffective assistance of counsel claim must fail.[6]

### D. *Garcia's Claims*

Garcia contends that his counsel was ineffective for calling Mock as a defense witness at the First Trial. This claim is devoid of merit. Mock's testimony at the First Trial was decidedly exculpatory. The decision to elicit such testimony clearly was a reasonable defense strategy as considered *ex ante.* Indeed, the fact that the First Trial ended with eleven for acquittal suggests that the strategy was not only reasonable but effective. Accordingly, Garcia's claim on the issue must fail.

Counsel's failure to object to the Government's "constructive amendment" of the Indictments also did not constitute ineffective assistance of counsel. Quite simply, there was no constructive amendment of the Indictments in this action. Pursuant to newly discovered information, the Government filed superseding Indictments in accordance with lawful and proper procedures. Counsel's failure to object to these lawful amendments did not constitute ineffective assistance.

Finally, counsel's failure to question Valdez as to the specific extent of his possible sentence reductions did not constitute ineffective representation. Garcia's counsel made clear to the jury that Valdez testified pursuant to a plea agreement with the Government in exchange for which he became eligible for a reduced sentence. Counsel's decision not to elicit further details of the plea agreement was a strategic choice that the Court will not evaluate through the distorting effects of hindsight. Accordingly, Garcia's ineffective assistance of counsel claims must fail.

### CONCLUSION

For the reasons stated above, petitioners' motions are HEREBY DENIED.

**SO ORDERED.**

---

4. Significantly, Mock cannot claim that his sentence should be reduced in light of Amendment 487. The Second Circuit has explicitly mandated that sentences handed down prior to the enactment of Amendment 487 should not be revised on the basis of the Amendment. *See United States v. Palacio,* 4 F.3d 150, 155 (2d Cir.1993).

5. Significantly, none of the petitioners contend that the substance at issue was not cocaine base.

6. Like Mock, Rodriguez claims that his counsel was ineffective for failing to argue that the substance seized from Apartment 24 was not "crack". This claim fails for the reasons discussed, *supra,* in denying Mock's claim.