_____

No. 96-2757
_____

United States of America,    *
    *
       Appellee,    *  Appeal from the United States
    *  District Court for the
  v.    *  District of Minnesota.
    *
Martin Robert Czeck,    *
    *
       Appellant.    *

_____

Submitted:  December 10, 1996

Filed:  January 30, 1997
_____

Before BOWMAN and HEANEY, Circuit Judges, and SMITH,[1] District Judge.

_____

BOWMAN, Circuit Judge.

Martin Czeck was convicted after a jury trial of six crimes relating to controlled substances and firearms.  On appeal, he raises two Fourth Amendment issues, and he challenges the sufficiency of the evidence on two firearms-related counts.  We affirm.

**I.**

Pursuing different leads, Minnesota state and Hennepin County law enforcement officials began in early 1995 to suspect Czeck of distributing marijuana.  On February 1 and February 16, state officers listened on a hidden transmitter as informant Theodore Ohm

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri, sitting by designation.

twice purchased a quarter-pound of marijuana from Czeck at Czeck's residence on Eleventh Avenue South in Minneapolis. Based on this information, officers obtained a search warrant for Czeck's residence, automobiles, and person. Several days later, on February 22, Ohm and an associate purchased an ounce of cocaine from Czeck at his residence.

Later in the evening of February 22, Czeck left his residence with his friend James Flores. Flores drove to his residence on Fifth Avenue South. The two men went into the house, and when they came out a few minutes later, Czeck was carrying a paper bag. As Flores and Czeck were driving back in the direction of Czeck's residence, a state police officer radioed a county sheriff's deputy to stop the car and arrest Czeck. When officers did so, they discovered a pound of marijuana in the paper bag at Czeck's feet and a number of keys on Czeck's person.

One officer then asked Flores to drive to a nearby parking lot. Because this officer had previously received information that Czeck was storing drugs at Flores's house, he asked Flores for permission to search the Fifth Avenue house. Flores agreed and signed a consent form. During the search, Flores directed officers to a locked yellow toolbox that he said belonged to Czeck. After obtaining a search warrant, officers opened the toolbox with one of the keys obtained from Czeck, and they discovered four pounds of marijuana inside.

Other officers executed the search warrant for Czeck's residence. On top of the kitchen cabinets, they discovered a .22 caliber pistol and a .357 Ruger in a wooden box. The .357 was loaded with hollow-point bullets, and a box of matching bullets was found elsewhere in the kitchen. Also nearby were three additional pounds of marijuana and a triple-beam scale.

Finally, based on information from an informant, officers obtained a search warrant for Czeck's brother's home. In the basement, they discovered two fire safes, which they opened with keys taken from Czeck. The safes contained approximately $135,000 in cash, plus jewelry and coins.

Czeck was indicted on two counts of distributing, one count of possessing with intent to distribute, and one count of conspiring to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994); one count of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (1994); and one count of being an armed career criminal (a five-time felon in possession of firearms), in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (1994).

Prior to trial, Czeck moved to suppress the bulk of the physical evidence against him, contending that the evidence was the fruit of his unlawful arrest and the unlawful search of Flores's residence. The District Court[2] denied the motion. After a four-day trial, the jury found Czeck guilty on all counts, and the court sentenced him to a total of 360 months in prison. The court also ordered Czeck to pay a conditional fine of $125,000, depending on the outcome of forfeiture proceedings in state court.

## II.

### A.

Czeck's initial Fourth Amendment argument is that because the police unlawfully arrested him in Flores's car without an arrest warrant, the fruits of the arrest must be suppressed. Czeck

---

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, adopting the report and recommendation of The Honorable Franklin L. Noel, Chief Magistrate Judge for the District of Minnesota.

-3-

concedes that the officers had probable cause to arrest him on the basis of the two controlled buys. The narrow question presented here, then, is whether an arrest warrant is required when police officers with probable cause to arrest a suspect do so while the suspect is riding in an automobile on a public street. We think no arrest warrant is required in such a situation.

A warrantless arrest in a public place is valid if the arresting officer has probable cause. See United States v. Watson, 423 U.S. 411, 418, 423-24 (1976); cf. Payton v. New York, 445 U.S. 573, 590 (1980) (holding that arrest in suspect's home ordinarily requires warrant). Several courts have upheld, without extensive discussion, arrests of suspects who were in automobiles located in public places. See United States v. DeMasi, 40 F.3d 1306, 1312 (1st Cir. 1994), cert. denied, 115 S. Ct. 947 (1995); Ford v. United States, 352 F.2d 927, 928-29, 933 (D.C. Cir. 1965) (en banc); cf. United States v. Wixom, 460 F.2d 206, 208-09 (8th Cir. 1972) (concluding warrantless arrest was proper; not clear from facts whether suspects were in car or preparing to get in car at time of arrest). Czeck cites no authority for the proposition that a car that is in a public place is not itself a "public place" for purposes of the Watson exception to the warrant requirement. Based on the reasoning of other Fourth Amendment decisions, we believe the opposite is true: when a suspect is in a car that is in a public place (and the suspect is thus at least partially visible to the public), an officer with probable cause may arrest the suspect without a warrant. See California v. Acevedo, 500 U.S. 565, 579-80 (1991) (explaining scope of permissible warrantless searches of cars); United States v. Chadwick, 433 U.S. 1, 12 (1977) (recognizing "the diminished expectation of privacy which surrounds the automobile"); United States v. Santana, 427 U.S. 38, 42 (1976) (holding that suspect standing in doorway of home is in public place); United States v. Hoyos, 892 F.2d 1387, 1393-94 (9th Cir. 1989) (holding that suspect looking over backyard fence at police is in public place), cert. denied, 498 U.S. 825 (1990); United

-4-

States v. Varkonyi, 645 F.2d 453, 457-58 (5th Cir. Unit A May 1981) (holding that suspect visible through business yard fence is in public place). We conclude that the warrantless arrest was proper.

It then follows that the search of the paper bag at Czeck's feet was authorized as a search incident to Czeck's arrest. See New York v. Belton, 453 U.S. 454, 460-61 (1981) (holding that search incident to arrest may include contents of any container within passenger compartment); United States v. Arias-Cardenas, 36 F.3d 36, 38 (8th Cir. 1994).

## B.

Czeck also challenges the search of Flores's residence and the subsequent discovery of the yellow toolbox on two related grounds: the voluntariness of Flores's consent and the authority of Flores to consent to the search of the particular room at issue here.

We see no error in the District Court's finding that Flores's consent to the search was voluntary.[3] The government has the burden of demonstrating voluntariness by a preponderance of the evidence, and we will reverse only on a showing of clear error. See United States v. Miller, 20 F.3d 926, 930 (8th Cir.), cert. denied, 115 S. Ct. 226 (1994). Voluntariness depends on the totality of the circumstances, see Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973), and we have previously identified eleven factors that inform the inquiry, see United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). The essence of Czeck's argument is that Flores was in custody when he purportedly consented to the

---

[3]A more recent case holds that the relevant touchstone is whether the officer reasonably believed that the consent to search was voluntary. See United States v. Sanchez, 32 F.3d 1330, 1335 (8th Cir. 1994), cert. denied, 115 S. Ct. 1119 (1995). Because the evidence at the suppression hearing was not developed along this line, we will limit our review to the District Court's finding that the consent was in fact voluntary.

search and that the presence of multiple police cars and armed officers caused Flores to acquiesce in the officers' request. The custodial status of the consenting party is not determinative, however. See Miller, 20 F.3d at 930. Even if Czeck is correct that Flores was in custody at the time of his consent--a question we need not determine here--the District Court did not clearly err in concluding that Flores's consent was voluntary, in light of Flores's age, sobriety, and experience with the criminal justice system, as well as the facts that Flores was detained only briefly, did not rely on any police misrepresentations, was in a public place when he consented, aided the police in the search, and (most importantly) signed a consent form clearly explaining that he had the right to refuse consent. See Chaidez, 906 F.2d at 381; United States v. Hathcock, No. 96-1501, slip op. at 8-9 (8th Cir. Jan. 9, 1997).

Nor do we believe that the District Court erred in finding that Flores had authority to consent to the search of the Fifth Avenue residence. Flores testified at the suppression hearing that he rented a room to Czeck--the bedroom in which the yellow toolbox was found--and that he never entered the room without Czeck's permission. Czeck also introduced evidence that two police officers indicated in search warrant applications that they had been told by informants that Czeck rented a room from Flores. The government countered with evidence that Flores referred to the room as his own bedroom, that the door to the room was unlocked, and that all of the contents of the room other than the toolbox appeared to belong to Flores (utility bills in Flores's name, an address book that included Czeck's phone number, and clothing that was far too small to fit Czeck, among other items).[4]

_____

[4]Czeck's counsel relied on this evidence at trial when he changed course and suggested that the toolbox, like the other items in the room, belonged to Flores, not Czeck.

The government may obtain consent for a warrantless search from the defendant or "from a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises. See Illinois v. Rodriquez, 497 U.S. 177, 188 (1990). We review the District Court's determination for clear error. See Iron Wing v. United States, 34 F.3d 662, 665 (8th Cir. 1994).

We note first that the District Court expressly found Flores's testimony not credible to the extent that Flores suggested he did not have authority to consent to the search. Even if we put that finding to one side, however, we recognize that nothing Flores did or said at the time of the search would have indicated to a reasonable officer that Flores was without authority to consent to the search. In fact, Flores referred to the room at issue as his own bedroom and led the officers into it. Czeck must therefore rely on the fact that several of the officers involved in the search evidently had information that Czeck rented a room from Flores. But in the circumstances of this case, where everyone involved believed that Czeck resided on Eleventh Avenue, the officers' knowledge is consistent with Flores's having common authority over the premises. A reasonable officer could have concluded (correctly, it seems) that Czeck paid Flores money for the privilege of storing drugs in Flores's house but that Flores still retained common authority over the whole of the house. Cf. id. (concluding that it was not unreasonable to believe that consenter had authority to consent to search of house, even though she had no key and had to climb in through window); United States v. Brokaw, 985 F.2d 951, 954 (8th Cir.) (holding that it was reasonable to believe that landowner could consent to search of trailer, even though defendant was inside trailer), cert. denied, 510 U.S. 913 (1993); United States v. Englebrecht, 917 F.2d 376,

377-78 (8th Cir. 1990) (holding that it was reasonable to believe that "cohabitant/employee" of defendant could consent to search of cars parked near home out of which auto salvage business operated), cert. denied, 499 U.S. 912 (1991). We conclude that the District Court correctly denied Czeck's motion to suppress.

### III.

### A.

Czeck also challenges the sufficiency of the evidence to show that he used or carried a firearm during and in relation to a drug trafficking crime. We view the evidence in the light most favorable to the jury's verdict, and we will "reverse for insufficient evidence only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Roach, 28 F.3d 729, 736 (8th Cir. 1994).

This case went to trial shortly after the Supreme Court decided Bailey v. United States, 116 S. Ct. 501 (1995). In Bailey, the Court restricted the meaning of "use" of a firearm to situations in which the defendant actively employs a firearm, which includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. But the Court also added that "a reference to a firearm calculated to bring about a change in the circumstances of the predicate offense is a `use,' just as the silent but obvious and forceful presence of a gun on a table can be a `use.'" Id.

Both officers who listened in on the controlled buy on February 16 testified that they heard Czeck mention that he had a .357 available if his neighbors did not care for his drug-peddling activities. Theodore Ohm, the informant who made the controlled purchase, testified that he did not recall that Czeck mentioned a gun on February 16, but the jury nevertheless could have credited

-8-

the testimony of the officers. Ohm also testified about another occasion on which he purchased cocaine from Czeck. When Ohm arrived, a loaded .357 was on a table in Czeck's living room. Later, Czeck, who had been smoking crack cocaine, walked around the house with the gun in his hands, looking out the windows and acting nervous. On another occasion, Ohm testified, Czeck mentioned that he was not worried about being robbed of money or drugs because he had several guns with which to protect himself; Czeck then took the .357 down from on top of the kitchen cabinets and showed it to Ohm. Ohm testified that, after seeing the weapon, he was aware that he was dealing with an armed individual, and he stated that that knowledge affected how he dealt with Czeck. Another informant, Leonard Kahn, related a similar incident in which Czeck made reference to a firearm during a drug sale; Kahn also suggested that the reference to the firearm affected his dealings with Czeck.

We believe this evidence supports the government's theory that Czeck's frequent references to his guns during drug transactions were "calculated to bring about a change in the circumstances" of the underlying drug offenses. Id. By making it plain to his customers that he was armed and willing to defend his business, Czeck discouraged them from any attempt to rob him and effectively may have warned them that negotiation over the price and quality of his wares was not encouraged. Recent post-Bailey decisions have confirmed that this type of intimidating reference to a weapon constitutes "use" of the weapon. See United States v. Jones, 84 F.3d 1206, 1211 (9th Cir.) (holding that defendant's claim to bank teller that he had a gun and fact that gun was found in his possession were sufficient to constitute use), cert. denied, 117 S. Ct. 405 (1996); United States v. Davis, 76 F.3d 311, 315 (9th Cir. 1996) (holding that showing gun to accomplice to intimidate him was sufficient to constitute use); Polanco v. United States, 935 F. Supp. 372, 375 (S.D.N.Y. 1996) (concluding that presence of nearby co-conspirator with gun in waistband of pants was sufficient to constitute use); cf. Beal v. United States, 924 F. Supp. 913, 916

(D. Minn. 1996) (holding that "macho braggadocio" in telephone conversation with co-conspirator about defendant's willingness to use firearms was insufficient to constitute use).

## B.

Finally, Czeck challenges the sufficiency of the evidence to show that he possessed a firearm, a predicate of his conviction as an armed career criminal. We think the evidence detailed in the foregoing discussion is sufficient to show that Czeck actually possessed the .357, but there is also ample evidence of constructive possession. Czeck argues that the Eleventh Avenue residence was not his home but the home of his girlfriend, and the evidence does show that the utilities were in her name. However, during their search of the home, officers discovered the deed to the premises in Czeck's name and Czeck's dental records showing the Eleventh Avenue address. After his arrest, Czeck had officers take him to the Eleventh Avenue home so he could retrieve a special breathing apparatus he needed for sleeping. Several drug customers indicated that the Eleventh Avenue house was Czeck's home, and police surveillance indicated that Czeck was there early in the morning and late at night. This evidence is certainly sufficient to demonstrate that the Eleventh Avenue home was Czeck's residence and that he had "dominion over the premises." United States v. Boykin, 986 F.2d 270, 274 (8th Cir.), cert. denied, 510 U.S. 888 (1993). Even aside from the evidence of his actual possession of the firearms, then, there was sufficient evidence of his constructive possession of them to support the conviction. See id.

## IV.

Czeck's pro se motion to supplement the record is granted. We have reviewed the arguments in his pro se memorandum and have concluded that they are meritless. The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.