# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2640

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States District |
| | * | Court for the District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Kenneth Stewart Oates, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted: December 15, 1998
Filed: April 5, 1999

———————

Before McMILLIAN, LAY, and HALL,[1] Circuit Judges.

———————

HALL, Circuit Judge.

Kenneth Stewart Oates appeals his conviction[2] for conspiracy to distribute crack cocaine and aiding and abetting the possession of crack cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841 and 846. Oates contends that evidence

———————

[1] The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

seized from a search of the house he was staying at should have been suppressed, that testimony from his co-defendant was improperly admitted because it was obtained pursuant to a plea agreement, that the district court erred by refusing his requests for various subpoenas, that evidence of his prior conviction should not have been admitted, and that there was insufficient evidence to support his conspiracy conviction. The district court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231, and this Court has jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291. We affirm.

## I.

Kenneth Oates had been released from prison on unrelated charges on October 7, 1997. Needing a place to stay following his release, Oates asked Vadia Smith whether he could move into her house, located at 424 31st Avenue North, Minneapolis, Minnesota. Vadia Smith agreed, assuming that it would be only for a few days. Instead, Oates stayed for two weeks, and, according to Smith, converted her house into a crack den, bringing in Oates' friend, Esigie Samuel Ogbemudia, to help manage operations. After Oates refused Smith's requests that he leave, Smith went to local authorities on October 23, 1997, and signed a consent form permitting police officers to search her dwelling. Her property manager confirmed for authorities that only Smith and her children were authorized to live at the house. The manager provided officers with a diagram of the residence, which Smith used to identify the first-floor bedroom occupied by Oates.

Soon after obtaining Smith's consent, police officers entered Smith's residence using a key provided by Smith, and announced their presence. They then proceeded to Oates' bedroom, and were forced to break down the locked door. When officers entered the room, they found Oates attempting to escape out of a window, with Ogbemudia close behind. Officers outside of the house had previously heard the sound of glass breaking, and had observed Oates throw a bag containing approximately one ounce of crack cocaine out of the bedroom window.

In their search of Oates' bedroom and its occupants, police found a .380 gun magazine in Ogbemudia's pocket, a bag of suspected crack cocaine and a cellular telephone on the bed, and another bag of suspected crack cocaine on the floor near the window that Oates had broken. In addition, police seized a loaded .380 semiautomatic handgun and a loaded .357 firearm that were underneath the bed. Police also discovered a .22 caliber rifle with ammunition in the bedroom closet, and a digital scale, a box of baking soda, sandwich bags, and another cellular telephone on the table next to the bed. A key in Oates' pocket fit the lock on the bedroom door. A magistrate judge rejected Oates' attempts to suppress the fruits of this search.

Oates' co-defendant, Ogbemudia, reached a plea agreement with the government immediately before trial began. Ogbemudia agreed to cooperate with authorities in the hope of receiving downward departures and other favorable treatment at sentencing. At Oates' trial, Ogbemudia provided details of the drug sales that took place at Smith's house, testifying that he would bring customers into Oates' bedroom, where Oates would then sell them crack. Ogbemudia explained that Smith permitted her house to be used for drug sales in exchange for receiving crack.

Over defense objections, the government introduced evidence at trial of Oates' prior conviction in 1995 for possessing 4.4 grams of crack cocaine in violation of Minnesota law. James Murphy, a Minneapolis police officer, testified that a normal drug user who purchased as little as 3.5 grams of crack at a single time would be likely to sell at least part of that amount to others in order to support his or her drug habit.

Oates also testified in his own defense, stating that Ogbemudia and Smith were the ones actually involved in the drug conspiracy. According to Oates, Ogbemudia had been supplying Vadia Smith with crack. He testified further that while Oates had been staying at Smith's house, Ogbemudia would travel to Smith's house to sell her drugs or, alternatively, Smith would go to another residence associated with Ogbemudia at 2333 Marshall Street Northeast, Minneapolis, to make her purchases. Oates also stated that

during his second week at Smith's home, Ogbemudia stored some bags and a gun at Smith's house. On the actual day of the search, Oates claimed that Ogbemudia brought over several more firearms, and later crack, because he feared that police were about to search his residence at 2333 Marshall Street. While Oates, an admitted drug user, was smoking some of Ogbemudia's crack, police raided Smith's house. Oates claimed that he was a mere crack user who was not involved in any ongoing drug conspiracy.

On cross-examination, the government questioned Oates further about his 1995 state conviction, and elicited testimony from Oates that he had originally been charged with the offense of selling, not merely possessing, crack cocaine.

During the course of Oates' three-day trial, the district court ruled on several requests for subpoenas made by Oates. On the first day of trial, the district court denied Oates' request to reconsider the prior denial of his application for a subpoena to review records of calls made from the cellular telephones that were seized during the search of Smith's residence. Oates expected the records to reveal a prior relationship between Ogbemudia and Smith, bolstering Oates' claims that he was not involved in what was an ongoing drug operation that he had only happened upon by circumstance. On the second day of trial, the district court denied Oates' request to subpoena officers who participated in a search at 2333 Marshall Street, which had been conducted at approximately the same time that police searched Smith's house. Oates apparently thought that the officers' testimony would corroborate his claims that Ogbemudia had only recently brought from the Marshall Street residence the items that police seized during their search of Smith's house.

Following Oates' conviction, the district court sentenced Oates to the statutory mandatory minimum of 240 months in prison, based on the 53.1 grams of crack cocaine involved in the crimes. Oates now challenges the magistrate judge's order refusing to suppress evidence seized from Smith's house; the district court's admission of Ogbemudia's testimony, which was allegedly tainted by his plea agreement; the court's

refusal to issue various requested subpoenas; the admission of Oates' prior crimes at trial; and the sufficiency of the evidence establishing that Oates participated in a conspiracy.

## II.

Oates first contends that the police search of the bedroom that he occupied in Smith's home was illegal despite the fact that Smith consented to the search orally and in writing. Oates argues that, at the time of the search, the police could not have known whether Smith had the authority to consent to the search of his room in her house because he may have had a separate, reasonable expectation of privacy in his room. Oates also asserts that the police violated the knock and announce rule by not knocking on his bedroom door and announcing their presence before entering Oates' bedroom. "We review the facts supporting the district court's denial of the motion to suppress for clear error and review de novo the legal conclusions based on those facts." United States v. Glenn, 152 F.3d 1047, 1048 (8th Cir. 1998).

The Supreme Court has stated that prior to searching a residence, police must reasonably believe at the time of the search that the person consenting to the search has the authority to do so. See Illinois v. Rodriguez, 497 U.S. 177, 185-86 (1990); see also United States v. Czeck, 105 F.3d 1235, 1239 (8th Cir. 1997) ("The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises."). Moreover, the Court has stated that a person's "status as an overnight guest is alone enough to show that [the guest] . . . had an expectation of privacy in the home that society is prepared to recognize as reasonable." Minnesota v. Olson, 495 U.S. 91, 96-97 (1990). The Court has also noted, however, that "[f]rom the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with . . . a place where [the guest] . . . and his possessions will not be disturbed by anyone but his host and those his host allows inside." Id. at 99 (emphasis added).

Evidence adduced before the magistrate judge demonstrated that Smith reported to police that two people with firearms had taken over her residence in order to sell drugs. The property manager verified for authorities that only Smith and her children were authorized to occupy the home at 424 31st Avenue North. Smith consented both orally and in writing to the search of her house, and officers were given a key to her residence. In addition, Smith did not charge Oates rent, and Oates had refused to leave the house despite the request of both Smith and her boyfriend. Based on these facts, Oates did not have a reasonable expectation of privacy in the bedroom of his host's house from police invited in by his host. See id. The police did have a reasonable basis for concluding that Smith had the authority to consent to the search.

This result is not affected by the possibility that police may not have known at the time of the search that Smith had previously asked Oates to leave her house. Police were told that Smith was the sole authorized leaseholder of the residence, which was verified by the property manager. Oates' reliance on United States v. Dearing, 9 F.3d 1428 (9th Cir. 1993), and United States v. Whitfield, 939 F.2d 1071 (D.C. Cir. 1991), for the proposition that Smith lacked authority to permit a search of a bedroom in her house that she did not ordinarily use, is without merit. Dearing involved a situation where a caretaker of the house, who only possessed authority to enter common areas of the house and who was about to quit his job, led police to a gun in his employer's bedroom. See Dearing, 9 F.3d at 1430. In Whitfield, authorities obtained the consent of the owner of the house to search her son's room. Before conducting the search, however, the owner informed authorities that her son paid rent when he could afford it. The court held that, based on this evidence of a landlord-tenant relationship between mother and son and other surrounding circumstances, it could not say that the authorities possessed enough information to make their search of the son's room reasonable under the Fourth Amendment. See Whitfield, 939 F.2d at 1074-75.

In the case at bar, however, officers had sufficient evidence to establish that Smith had authority to permit the search of Oates' bedroom. This conclusion was based

6–

on the statements of Smith and the property manager, in addition to the fact that Oates paid no rent to Smith. The evidence indicates that Oates was only a guest in Smith's home, and probably one that had overstayed his welcome. Following the teaching of Olson, it cannot be said that the authorities erred in concluding that Oates' host, Smith, could consent to a search of her entire residence by authorities. In short, "the facts available . . . justified a reasonable officer in the belief that the consenting party had authority over the premises." Czeck, 105 F.3d at 1239.

Oates' argument that the police violated the knock and announce rule by not announcing themselves at Oates' bedroom door is entirely without merit. It is true that the announcement "principle is an element of the reasonableness inquiry under the Fourth Amendment." Wilson v. Arkansas, 514 U.S. 927, 934 (1995); see also United States v. Cooper, No. 98-2410, 1999 WL 58574, at *2 (8th Cir. Feb. 4, 1999). But the magistrate found, and Oates does not contest, that the police loudly announced their presence when they entered the house.[3] Oates testified at trial that he heard this warning. That Oates was aware that police had entered the residence is only confirmed by his actions, which included breaking the bedroom window and throwing a bag of crack outside, followed by an attempt to escape from the house. As a result, Oates was properly alerted to the presence of police in Smith's residence.

Moreover, police kicked in the bedroom door only after seeing a light under the door and hearing movement inside. Given the fact that Smith had informed officers that Oates and Ogbemudia possessed firearms, one cannot fault the police for failing to

---

[3] The fact that officers announced their presence before entering the dwelling largely removes any force from Oates' claim that the officers failed to comply with the constitutional dictates of the announcement rule. Cf. United States v. Bragg, 138 F.3d 1194, 1194 (7th Cir. 1998) (finding that knock-and-announce statute, 18 U.S.C. § 3109, "applies per house rather than per door"); United States v. Remigio, 767 F.2d 730, 732 n.2 (10th Cir. 1985) ("Once law enforcement officials lawfully enter a house, they need not always comply with the knock and announce statute before entering every other closed door within the residence.").

announce their presence for a second time. The fear of being shot qualifies as a sufficient countervailing law enforcement interest to excuse application of the announcement rule. See Wilson, 514 U.S. at 934-35; Cooper, 1999 WL 58574, at *2.

## III.

Oates next argues that the trial court committed plain error by failing to exclude Ogbemudia's testimony because it was tainted by a plea agreement that Ogbemudia had entered into with the government. Oates claims that the favorable treatment Ogbemudia was promised under the plea agreement violated the dictates of 18 U.S.C. § 201(c). Oates' argument has been squarely rejected by this Court, and we need not address the matter further. See United States v. Johnson, No. 98-2671, 1999 WL 55234, at *5 (8th Cir. Feb. 8, 1999).

## IV.

Oates also contends that the district court erred by denying his requests for subpoenas pursuant to Federal Rule of Criminal Procedure 17(b) and (c). The magistrate judge had rejected Oates' request for records of calls made from the cellular telephones seized from Oates' bedroom because Oates had failed to demonstrate that the records were relevant to the charged offenses. The district court affirmed the magistrate judge's determination on the first day of Oates' trial.

We review the district court's decision declining to authorize the issuance of a subpoena duces tecum for an abuse of discretion. See United States v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996). "[I]n order to warrant the issuance of a subpoena duces tecum, a party must show that (1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." Id. (internal quotation omitted).

We cannot say that the district court abused its discretion in declining to issue the subpoena. In his application for the subpoena, Oates indicated that the records

would establish that Oates did not own the cellular telephones and that the telephones were used to call Smith's house before Oates was released from prison, thereby demonstrating that the house was involved in drug distribution independently from Oates and refuting claims that Oates took over Smith's house to trade crack. Before the district court, Oates elaborated that the records would have shown numerous calls to 2333 Marshall Street Northeast and other addresses that were closely associated with Ogbemudia, and not Oates, which would suggest that it was actually Ogbemudia who was the active drug trader.

But the government correctly notes that it never contended that Oates owned the cellular telephones. It points to Ogbemudia's uncontested testimony that Clinton Strother, who resided at the Marshall Street address, owned the telephones. It is also of little relevance that the telephone records may have revealed calls to Smith's house prior to Oates' release from prison because Smith was a crack user, and may have been contacted by crack dealers at 2333 Marshall Street, which, according to Ogbemudia, was a known crack house. Calls to the Marshall Street address would have been similarly unremarkable because that is where Strother, the owner of the telephones, lived. In addition, calls to other addresses linked to Ogbemudia would have been of small import given the fact that Ogbemudia apparently stayed at Strother's house on occasion and borrowed his car. Even if the records could somehow have demonstrated that Ogbemudia actively traded drugs before Oates' release from prison, this fact would have presumably been consistent with Ogbemudia's admission that Ogbemudia had started selling crack in June of 1997. Based on these facts, we cannot say that the district court committed reversible error by denying Oates a subpoena.

Oates also argues that the district court abused its discretion by not granting his request to subpoena, pursuant to Rule 17(b), police officers who had participated in the search of 2333 Marshall Street Northeast, which was an address linked with Ogbemudia, and which was searched at approximately the same time as the Smith residence. The district court denied the request because it was made at such a late date

9–

and related to matters of questionable relevance. We review the district court's decision for an abuse of discretion. See id. at 1282. Oates must demonstrate "that the desired witnesses are necessary to an adequate defense, and reversal is appropriate only if 'the exceptional circumstances of the case indicate that the defendant's right to a complete, adequate and fair trial is jeopardized.'" Id. at 1282-83 (quoting United States v. Wyman, 724 F.2d 684, 686 (8th Cir. 1984)).

Initially, we note that in his request for the subpoenas, presented to the district court on the second day of trial, Oates merely stated that the witnesses were needed "in order to introduce testimony at trial for his defense." This conclusory statement hardly satisfied Oates' burden under Rule 17(b). See United States v. LeAmous, 754 F.2d 795, 798 (8th Cir. 1985) ("Mere allegations of materiality and necessity are not sufficient to establish that a witness is necessary to an adequate defense."). Oates' later representations to the trial court indicated that officers could have testified to the fact that Ogbemudia sold drugs from Marshall Street because the Marshall Street warrant contained a description of a controlled sale of crack by someone at that location who might have been Ogbemudia. On appeal, Oates further speculates that testimony from officers who executed the Marshall Street warrant would have corroborated Oates' testimony that Ogbemudia was the true drug distributor, and that Oates was a mere user of crack. To support his claims that drug paraphanalia was only recently moved to Smith's house from Marshall Street, Oates points to the generic list of drug-related items that officers were to search for at Marshall Street, many of which were recovered at Smith's house.

Oates' argument is somewhat attenuated. An inventory of the property actually seized at the Marshall Street address reveals that various items associated with drug trafficking were present at that location. It is therefore far from clear how the fact that drug paraphanalia was to be searched for and was actually found at Marshall Street supports Oates' claim that Ogbemudia moved his drug paraphanalia from Marshall Street to Smith's house. More importantly, Ogbemudia's testimony clearly establishes

10–

that the Marshall Street residence was a crack house. Thus, even if Ogbemudia did sell crack from Marshall Street, this would be consistent with Ogbemudia's testimony that Ogbemudia had been selling crack since June of 1997. As a result, the district court did not err in refusing to grant Oates' request for what was at best cumulative evidence. See Wyman, 724 F.2d at 687 ("There is no requirement that a defendant be allowed to subpoena witnesses at public expense where witnesses would only provide cumulative testimony."). Oates has not demonstrated that this evidence was necessary for his defense.

V.

Oates next argues that the district court abused its discretion under Federal Rule of Evidence 404(b) when it permitted the government to admit evidence that Oates pled guilty on August 8, 1995, to third degree possession of crack cocaine, a felony under Minnesota law. "We review the admission of such evidence for abuse of discretion, and we will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Brown, 148 F.3d 1003, 1009 (8th Cir. 1998). Rule 404(b) "permits the admission of evidence of other crimes or bad acts to prove, among other things, intent, motive, or knowledge." United States v. Wint, 974 F.2d 961, 966 (8th Cir. 1992).

Evidence of other crimes is admissible if "(1) it is relevant to a material issue; (2) it is similar in kind and not overly remote in time to the crime charged; (3) it is supported by sufficient evidence; and (4) its potential prejudice does not substantially outweigh its probative value." United States v. Green, 151 F.3d 1111, 1113 (8th Cir. 1998).

Oates contends that evidence of the prior conviction was admitted in error because it was irrelevant, being based on only 4.4 grams of crack, which was a far smaller quantity than the 53.1 grams of crack involved in the instant distribution offenses. Oates also claims that admission of the conviction was overly prejudicial and too remote in time to the instant offense.

11–

Oates' claims lack merit. First, the state offense was not too remote in time, occurring within three years of the instant convictions. See id. at 1113-14 (stating that three and one-half years between prior arrest and instant arrest were "well within permissible time boundaries for the introduction of Rule 404(b) evidence"); Wint, 974 F.2d at 967 (noting that "evidence of an offense committed within the previous five years is reasonably close in time"). Oates' claims of irrelevance and prejudice are also readily dismissed because the prior conviction was probative of Oates' knowledge and intent in committing the federal crimes which are the subject of this appeal. "Our court has held that evidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element."[4] United States v. Logan, 121 F.3d 1172, 1178 (8th Cir. 1997).

Oates also contends that the government improperly cross-examined him about events surrounding the prior conviction after he took the stand in his own defense. We find Oates' arguments to be without merit, and note that any possible error would have been harmless in light of the overwhelming evidence of Oates' guilt. See United States v. Mejia-Uribe, 75 F.3d 395, 399 (8th Cir. 1996) (finding harmless error in light of overwhelming evidence of guilt which demonstrated that the questioned evidence "did not have substantial and injurious effect or influence in determining the jury's verdict") (internal quotation omitted).

Oates was found in a bedroom, to which he had the key, with crack cocaine, two loaded firearms, cellular telephones, and other drug paraphanalia. Oates was attempting to escape at the time of the police search, and had thrown crack cocaine out of the window. Ogbemudia's testimony clearly identified Oates as an active participant

---

[4] Indeed, Officer Murphy's testimony indicating that 4.4 grams of crack would constitute a distributable amount of crack cocaine suggests that the prior state conviction would be of greater probative value in evaluating the instant distribution offenses than a prior possession conviction which involved an amount of drugs consistent only with personal use.

in crack sales made at Smith's house. As a result, any possible error in the scope of the government's cross-examination relating to the 1995 conviction was clearly harmless.

## VI.

Finally, Oates claims that insufficient evidence supports his conspiracy conviction. Our standard of review is clear:

> The defendant's conviction will be upheld if, after viewing the evidence in a light most favorable to the Government, there is substantial evidence to support the jury's verdict. The Government must be given the benefit of all reasonable inferences that may be reasonably drawn from the evidence. If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.

United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991) (citations omitted).

To establish a conspiracy, the government must prove beyond a reasonable doubt at trial that there was an agreement to achieve some illegal purpose, that the defendant knew of this agreement, and that the defendant knowingly joined the conspiracy. See United States v. Jensen, 141 F.3d 830, 833 (8th Cir. 1998). A conspiracy may be wholly inferred from circumstantial evidence, and only slight evidence connecting a defendant to the conspiracy is required once the conspiracy itself is established. See United States v. Fetlow, 21 F.3d 243, 247 (8th Cir. 1994).

Oates claims that there is insufficient evidence to establish that he entered into a plan or agreement with Ogbemudia to distribute crack. This argument is untenable in light of Ogbemudia's testimony describing how he and Oates would sell crack from Smith's house. Ogbemudia testified that he would meet customers at the door and take them to the first floor bedroom where Oates would sell up to $1000 worth of crack a day. Ogbemudia also stated that he had previously purchased a distribution amount of crack on Oates' behalf because the vendor refused to sell to Oates on favorable terms. As a result, this is not a case where the government has failed to present evidence of some understanding between parties reaching beyond a mere sales agreement. See United States v. West, 15 F.3d 119, 121 (8th Cir. 1994). Viewing the evidence in the

light most favorable to the government, Ogbemudia's testimony and other evidence in the case clearly establishes that Oates and Ogbemudia coordinated their activities to sell crack to third parties.  See United States v. Romero, 150 F.3d 821, 826 (8th Cir. 1998) ( "The evidence is sufficient to support a conspiracy where the drugs were purchased for resale."); United States v. Cabrera, 116 F.3d 1243, 1245 (8th Cir. 1997) ("The government is not required to prove that an express agreement existed. [R]ather . . . [it] need only establish a tacit understanding between the parties.") (internal quotation omitted) (first alteration in original).  Oates' claim therefore must fail.

## VII.

For the foregoing reasons, Oates' conviction is AFFIRMED.


A true copy.

    ATTEST:

            CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.