# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2819

_____

|  |  |  |
|---|---|---|
| Jerry J. Latorre, | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 15, 1999
Filed: October 29, 1999

_____

Before BOWMAN, LAY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This case arises from Jerry J. Latorre's guilty plea to a firearms charge in connection with drug trafficking under 18 U.S.C. § 924(c)(1). Latorre filed a motion pursuant to 28 U.S.C. § 2255 in the District Court to vacate, set aside, or correct his sentence. The District Court denied the motion as procedurally defaulted. Shortly thereafter, the Supreme Court decided Bousley v. United States, 523 U.S. 614 (1998), and clarified the procedural default rule. We vacate the order denying Latorre's § 2255 motion and remand the case to the District Court for further consideration in light of Bousley.

# I.

In 1994, a grand jury returned an eleven-count indictment against Latorre containing various drug and weapons charges. On January 5, 1995, pursuant to a plea agreement, Latorre pled guilty to Count One, conspiracy to distribute narcotics near a protected location, and Count Three, carrying or using a firearm during and in relation to drug-trafficking crimes under § 924(c)(1). In exchange, the government dropped the other charges. Latorre was sentenced to thirty months on the conspiracy charge and a consecutive sixty months on the firearms charge. Later that year, the Supreme Court issued its opinion in Bailey v. United States, 516 U.S. 137 (1995), clarifying the reach of § 924(c)(1).

After serving thirty months, Latorre filed a motion under 28 U.S.C. § 2255 seeking to set aside the sixty-month sentence on the ground that there is no factual basis to support the § 924(c)(1) charge under Bailey. On May 9, 1997, relying on Bousley v. Brooks, 97 F.3d 284 (8th Cir. 1996), the District Court denied Latorre's motion on the ground that his substantive claims were procedurally defaulted. The court, correctly applying our decision in Bousley, reasoned that Latorre's failure to appeal his sentence directly waived his claims in the absence of a showing of cause and actual prejudice. Shortly thereafter, on May 18, 1997, the Supreme Court reversed Bousley and held that a defendant who pled guilty, pre-Bailey, to a § 924(c)(1) charge may escape procedural default for failure to appeal if the defendant can establish actual innocence. Bousley v. United States, 523 U.S. 614, 622-24 (1998). Latorre then timely appealed the District Court's denial of his § 2255 motion. Appellant argues that, under Bousley, he is entitled to an evidentiary hearing on his claim of actual innocence of the § 924(c)(1) charge.

II.

The government argues first, that Latorre already received his hearing, and second, that no evidentiary hearing is necessary because the record proves Latorre is guilty.[1]  Both arguments fail.

---

[1]At oral argument, the Court, <u>sua</u> <u>sponte</u>, raised the question presented by Latorre's explicit waiver in his plea agreement of both his direct-appeal rights and his collateral-attack rights under § 2255.  The government did not raise this question in the District Court, much less in this appeal.  We are puzzled as to why the government would bargain for and obtain such a waiver as part of a plea agreement and then not seek to enforce the waiver.  Moreover, we are less than ecstatic that this appeal has come to us on the merits of Latorre's § 2255 motion without our being afforded an opportunity to rule on the important threshold question of whether this § 2255 motion is barred by Latorre's waiver, agreed to by him as part of the price for a favorable plea agreement.  This Court, of course, does not normally address issues  not raised in the district court nor does it normally address issues not raised by a litigant on appeal, <u>see</u> <u>United States v. Gutierrez</u>, 130 F.3d 330, 332 (8th Cir. 1998); <u>Stephenson v. Davenport Community Sch. Dist.</u>, 110 F.3d 1303, 1306-07 n.3 (8th Cir. 1997), and we shall not do so here.

We note that this Court has not yet addressed the question of a defendant's power to waive <u>collateral-attack</u> rights in a plea agreement.  Our decisions upholding waivers of <u>direct-appeal</u> rights have explicitly noted the availability of § 2255 collateral attack.  <u>See</u> <u>United States v. Michelsen</u>, 141 F.3d 867, 872 n.3 (8th Cir.) ("Nor would [Michelsen's waiver] prevent a challenge under 28 U.S.C. § 2255 to an 'illegal sentence' . . . ."), <u>cert denied</u>, 119 S. Ct. 363 (1998); <u>United States v. Rutan</u>, 956 F.2d 827, 829 (8th Cir. 1992) ("We also note that an illegal sentence can still be challenged under 28 U.S.C. § 2255 for habeas corpus relief, so a defendant is not entirely without recourse from an erroneous sentence.").  Other courts have upheld collateral-attack waivers in some circumstances but not in others.  <u>Compare</u> <u>United States v. Wilkes</u>, 20 F.3d 651, 653 (5th Cir. 1994) (concluding that direct-appeal and § 2255 rights are indistinguishable), <u>with</u> <u>Jones v. United States</u>, 167 F.3d 1142, 1145 (7th Cir. 1999) (noting that defendant could not waive collateral-attack rights with regard to ineffective assistance of counsel relating to negotiation of waiver) <u>and</u> <u>United States v. Abarca</u>, 985 F.2d 1012, 1014 (9th Cir.) (declining to hold that defendant's waiver may "categorically" foreclose claim to ineffective assistance of counsel or involuntariness),

The District Court did hold a hearing on Latorre's § 2255 motion. But given our panel decision in <u>Bousley</u>, the District Court only made findings on cause and prejudice. The court did not hold a hearing on actual innocence; the question, therefore, is whether one is necessary.

This Court reviews de novo the denial of a § 2255 motion without an evidentiary hearing and affirms only if the motion, files, and record conclusively show the movant is not entitled to relief. <u>See</u> <u>United States v. Duke</u>, 50 F.3d 571, 576 (8th Cir.), <u>cert. denied</u>, 516 U.S. 885 (1995). In some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary. <u>See, e.g.</u>, <u>United States v. Apker</u>, 174 F.3d 934, 937-41 (8th Cir. 1999) (concluding that careful plea colloquy along with "lengthy record" arising from "spate of appeals" by members of large conspiracy combined to obviate any need for remand to district court on actual innocence under § 924(c)(1)). Absent such clarity, an evidentiary hearing is required. <u>See</u> <u>Hohn v. United States</u>, No. 96-3118, slip. op. at 5 (8th Cir. Oct. 5, 1999) (remanding case to district court for "fact-bound analysis" of actual innocence); <u>Johnson v. United States</u>, 186 F.3d 876, 876 (8th Cir. 1999) (reversing District Court's grant of § 2255 motion because no evidentiary hearing was held). At such a hearing, the defendant must establish that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." <u>Bousley</u>, 523 U.S. at 623 (internal quotations omitted). If, as part of the plea agreement, the government withdrew more serious

_____

cert. denied, 508 U.S. 979 (1993). Moreover, even if generally valid, waivers of collateral-attack rights would be enforceable only if knowing and voluntary. <u>Cf.</u> <u>Michelsen</u>, 141 F.3d at 871 (direct-appeal waivers enforceable only if knowing and voluntary); <u>Rutan</u>, 956 F.2d at 829 (same). Because the government did not raise the issue in the District Court, that court did not determine whether the waiver was knowing and voluntary, leaving the record incomplete. <u>See</u> <u>Hunter v. United States</u>, 160 F.3d 1109, 1113 (6th Cir. 1998) (declining to consider waiver for this reason, <u>inter alia</u>). Although we do not attempt to decide the issue, on remand the government remains free to assert its claim that Latorre's § 2255 motion is barred by his explicit and unequivocal waiver of his § 2255 rights.

charges, the defendant must demonstrate actual innocence of those charges as well. See id. at 624. The primary source of information for the District Court is the plea proffer record. See id. at 624 n.3. The government, however, is permitted to present "any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before [the Supreme Court's] decision in Bailey." Id. at 624.

The record here contains two relevant items of proof. First, the District Court inquired into the factual basis of Latorre's plea pursuant to Fed. R. Crim. P. 11(f). During this proceeding, Latorre admitted his "use" of a firearm during and in relation to drug-trafficking offenses. Specifically, he admitted that he had a firearm "with him" during the commission of drug-trafficking offenses. Second, Latorre also admitted specific conduct in an affidavit submitted to the District Court as part of the § 2255 proceedings. These admissions establish only the following: Latorre owned guns and kept them in his home, he sold drugs in his home, and, at times, his customers may have seen his guns in his home. For the reasons below, Latorre's various admissions do not conclusively show that he will be unable to prove his innocence of the § 924(c)(1) use or carry charge.[2] The government alleges that it has further proof, and even specifies the content of witnesses' potential testimony. However, these witnesses were not heard at the § 2255 hearing in the District Court. Assertions by counsel cannot foreclose an evidentiary hearing, at which such testimony can be taken and subject to cross-examination.

---

[2]Latorre's indictment charged him with both using and carrying a firearm under § 924(c)(1), so his sentence may be upheld on either ground. See United States v. Larkin, 118 F.3d 1253, 1255 (8th Cir.), cert. denied, 118 S. Ct. 641 (1997); see also United States v. Sanders, 157 F.3d 302, 304 (5th Cir. 1998); Arango-Alverez v. United States, 134 F.3d 888, 891 n.2 (7th Cir. 1998).

We start with Latorre's Rule 11(f) plea colloquy. The government's proffer of proof contains little about the § 924(c)(1) count. Specifically, the government's attorney stated the following:

> Latorre had with him on various times when he sold marijuana and other drugs, marijuana specifically, to an undercover agent or to a confidential informant, he had firearms with him. Specific firearms listed in Count Three were a .22 caliber North American Arms derringer and two nine millimeter pistols which where used during and in relationship with drug trafficking offenses.

Tr. of Guilty Plea and Sentencing at 14-15. Latorre agreed to this description without further elaboration. Id. at 16.

Two parts of the plea colloquy require analysis. First, it is plain that Latorre's agreement to the bare legal conclusion that he "used" firearms "during and in relationship with" drug-trafficking offenses is insufficient to foreclose his claim of actual innocence. At the time of his plea, this Court's precedent dictated that § 924(c)(1) "use" merely required "that the weapon be present and available, in the house in which the drugs and cash are located, in the event it is needed." United States v. Johnson, 12 F.3d 827, 832 (8th Cir.), cert. denied, 511 U.S. 1095 (1994). Bailey, however, specifically rejected that meaning of "use," requiring "active employment" of a firearm. Bailey, 516 U.S. at 148-49. Given the change in the governing definition, Latorre's pre-Bailey admission that he "used" a firearm is not inconsistent with his innocence.

Second, Latorre's admission during the plea colloquy that he had guns "with him" is also inconclusive. This statement demonstrates nothing more than possession, which is insufficient to prove either "use" or "carry." See Bailey, 516 U.S. at 143 (Congress could have replaced "use or carry" with "possess" but chose not to do so); see also id.

at 146 (interpreting "use" more narrowly than possession preserves meaningful role for "carry").

A more serious issue is the content of Latorre's affidavit submitted with his pro se motion to reconsider the denial of his § 2255 motion. It contains the following language:

> That further, during several of the marijuana sales that I made to my friends, firearms may have been visible to the participants; but these firearms were present in the basement only incidentally to the drug transactions and they were never a part of, or used to facilitate, the drug transaction.

This "display" of weapons, the government asserts, constitutes use under Bailey. The government's position presumes a per se rule that the "visible presence" of a firearm during a drug sale constitutes use during and in relation to the drug crime. Such a holding would be contrary to Bailey and the cases that follow it.

The starting point, of course, is the interpretation of § 924(c)(1) provided by the Supreme Court. The core holding of Bailey is that "use" means "active employment" of a firearm, not "inert presence." Bailey, 516 U.S. at 143-50. Active employment includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire a firearm." Id. at 148. A defendant does not violate § 924(c)(1) "merely [by] storing a weapon near drugs or drug proceeds," or by "placement of a firearm to provide a sense of security or to embolden." Id. at 149.

The Court's further explanation is instructive: "[A] reference to a firearm calculated to bring about a change in the circumstances of the predicate offence is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" Id. at 148 (emphasis added). This sentence has been described as endorsing the "threat-as-use" theory. See Polanco v. United States, 935 F. Supp. 372, 374 (S.D.N.Y.

-7-

1996), aff'd, 112 F.3d 505 (2d Cir.), cert. denied, 521 U.S. 1128 (1997).  A reference to a firearm intended to change behavior is a 'use' because such a reference is a threat by definition, but a gun on a table merely can be a 'use' because, depending on the situation, it might not be threatening at all.  If the visible presence of a firearm is accompanied by circumstances that combine to create an implicit threat, then the firearm has been "used."  Otherwise, the firearm is merely present.

Holding that visible presence alone constitutes "use" would be inconsistent with the Supreme Court's repeated emphasis on "active employment."  Visible presence alone is passive, just like simple possession.  "The fact that a firearm is visible does not necessarily mean that the presence of the firearm was 'disclosed' in a 'calculated' manner to 'bring about a change in the circumstances of the predicate offence.' [Bailey, 516 U.S. at 148.]  Disclosure of a firearm suggests an action by the defendant, while mere visibility of a weapon does not."  United States v. French, No. 95-30386, 1996 WL 453441, *2 (9th Cir. Aug. 5, 1996).

Two decisions of this Court confirm the importance of factors beyond the mere visibility of a weapon.  In United States v. Czeck, 105 F.3d 1235 (8th Cir. 1997), we upheld a "use" conviction under § 924(c)(1) where the defendant showed a weapon to his drug customers.  We relied on the testimony of two customers that Czeck's display of his weapon affected their dealings with him.  "By making it plain to his customers that he was armed and willing to defend his business, Czeck discouraged them from any attempt to rob him and effectively may have warned them that negotiation over the price and quality of his wares was not encouraged."  Id. at 1241.  Similarly, in United States v. Aikens, 132 F.3d 452 (8th Cir.), cert. denied, 119 S. Ct. 114 (1998), we affirmed a conviction under § 924(c)(1).  There, an undercover officer saw a shotgun next to Aikens during a drug transaction.  We took care to ensure that "Aikens did more than merely store his shotgun near the drug crime,"  noting both that the weapon was close to Aikens, so that "he could immediately fire it if anything went wrong," and that Aikens told the undercover officer that the gun was "for his protection."  Id. at 454.

Therefore, we concluded that the gun was "'calculated to bring about a change in the circumstances' of the underlying drug offense." Id. (quoting Bailey, 516 U.S. at 148). We also quoted the passage from Czeck, supra, concerning the communicative purposes of the weapons, and concluded that "Aikens' weapons served similar purposes here." Id.

The Seventh Circuit has addressed the "visible presence" question more directly. In Stanback v. United States, 113 F.3d 651 (7th Cir. 1997), the government attempted to support a § 924(c)(1) conviction through evidence that a firearm was plainly visible on a coffee table when police arrived on the scene. The court acknowledged Bailey's reference to a "silent but obvious and forceful presence of a gun on a table," but, citing our opinion in Czeck, reasoned as followed:

> What is missing [here], however, is any evidence from which one might reasonably infer that the placement of the gun on the coffee table was anything more than fortuitous—in other words, that Stanback placed it there (if indeed he placed it there) in open view to convey the same type of intimidating message that a bank robber sends when he declares to a teller, 'I have a gun.'

Id. at 656. The court admitted the possibility that the gun was intended to serve such an intimidating purpose, but concluded that, in the absence of evidence, "only speculation will permit us to construe the mere presence of the gun on the table as the kind of 'active employment' that Bailey requires." Id.; see also United States v. Benboe, 157 F.3d 1181, 1185 (9th Cir. 1998) (concluding that evidence that firearm was found "in or on furniture" near drugs not sufficient to foreclose hearing on actual innocence).

In support of its contention that the visible presence of a gun is always use, the government relies only on a divided panel of the Fifth Circuit. In United States v. Wainuskis, 138 F.3d 183 (5th Cir. 1998), the majority found a "use" under § 924(c)(1)

-9-

where a co-conspirator was seen with a loaded gun visible within arm's reach.  See id. at 188-89.  The dissent argued that the firearm "was not 'used' just because it was sitting in plain view," and that "'active employment' requires something more than simply being within arm's reach of a visible gun." Id. at 196  (DeMoss, J., dissenting). Even the majority opinion, however, does not necessarily stand for the proposition that any visible presence of a gun is active employment; it may have been reasonable, in the circumstances, to infer an implied threat from a loaded weapon in close proximity to the co-conspirator.  See id. at 188-89.  To the extent that Wainuskis holds any firearm in plain view is "used," we disagree.

Because the current record does not conclusively show that Latorre is entitled to no relief under § 2255, unless Latorre is found on remand to have waived his § 2255 rights (see footnote 1, supra), he is entitled to an evidentiary hearing on his claim of actual innocence.

### III.

The District Court's denial of Latorre's § 2255 motion is vacated, and the matter remanded to the District Court for (1) resolution of the waiver issue discussed in footnote 1 of this opinion, if the government chooses to raise that issue, and (2) an evidentiary hearing on Latorre's claim of actual innocence, unless Latorre's § 2255 motion does not survive consideration of the waiver issue.  If Latorre's § 2255 motion survives his apparent waiver of his § 2255 rights, then to obtain § 2255 relief, Latorre must show that he is actually innocent of both "use" and "carry" under § 924(c)(1), and also must show that he is actually innocent of any more serious charges that were dismissed pursuant to his plea agreement.  See Bousley, 523 U.S. at 624.

LAY, concurring in the result only.

I agree that Latorre must show that he is actually innocent of both the "use" and "carry" prongs under § 924(c)(1) and must also show that he is actually innocent of any more serious charges that were dismissed pursuant to his plea agreement. This is the holding of Bousley v. United States, 523 U.S. 614, 622-24 (1998).

I write separately because I cannot agree with the pure dicta of footnote one. The very essence of judicial restraint is not to raise issues that were neither raised by the parties in the district court nor briefed to this court. The majority acknowledges this concern as addressed by our cases, but treats this as a rule of convenience rather than a principle of law. The majority uses the footnote to chastise the attorney representing the United States for failure to raise the issue of defendant's waiver of his right to file either a direct or collateral attack on his sentence as contained in his plea agreement. The majority, for whatever reason, now urges the United States to raise such an issue on remand.[3] The United States is represented in this case by a well-qualified Assistant United States Attorney who appeared before this court under the direction of a very dedicated and competent United States Attorney. This criticism of counsel is totally bewildering to me. The United States needs no assistance from this court as to what litigation strategy it should use in federal court. It is nothing more than pure speculation as to what litigation strategy the government has adopted. However, there could be many reasons why the government would not raise the issue of waiver here. Cf. United States v. Michelsen, 141 F.3d 867, 872 n.3 (8th Cir.) (a § 2255 challenge to illegal sentence

[3]It is ironic to me that in a § 2255 case a petitioner may not raise an issue on appeal when the issue has been procedurally defaulted in the district court, yet the court expressly ignores this principle when dealing with the United States government. See Hunter v. United States, 160 F.3d 1109, 1114 (6th Cir. 1998) (finding government forfeited waiver argument by not raising it in § 2255 motion in district court). This is hardly an acknowledgment of a "level playing field."

cannot be waived; one who is actually innocent of a crime may always challenge an illegal sentence), <u>cert. denied</u>, 119 S. Ct. 363 (1998).

Justice Scalia once wrote: "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." <u>United States v. Burke</u>, 504 U.S. 229, 246 (1992) (Scalia, J. concurring).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.