# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2019

_____

United States of America,    *
               *
     Appellee,    *
               *  Appeal from the United States
  v.          *  District Court for the
               *  District of Minnesota.
Salamo Nampiona     *
Rakotojoelinandrasana,   *  [UNPUBLISHED]
               *
     Appellant.   *

_____

Submitted: November 18, 2011
Filed: December 27, 2011

_____

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

_____

PER CURIAM.

  Salamo Nampiona Rakotojoelinandrasana pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). He reserved the right to appeal a pre-trial order adopting the report and recommendation of the magistrate judge. He appeals arguing that the district court[1] should have suppressed evidence seized from his vehicle and apartment. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

  [1] The Honorable Michael J. Davis, Chief United States District Judge for the District of Minnesota.

Rakotojoelinandrasana robbed a bank by asking a teller to place money in a backpack. The teller placed the money *and* a dye pack in the backpack. Five days later, a casino investigator told officer Mark Tabone that over the weekend someone had gambled with dye-stained money. The investigator said that the man returned to the casino, placed stained money in the gaming machines, and "cashed out" immediately (exchanging gaming tickets for unstained money).

Tabone went to the casino, saw the stained money, and decided to monitor Rakotojoelinandrasana. Tabone had casino security officers bring him to the security office. Rakotojoelinandrasana, a college student fluent in English, said he found the dyed money in a dumpster. Tabone relayed this to the FBI, and told Rakotojoelinandrasana that the FBI would like to speak with him. He agreed.

After being detained in the casino's interview room for 56 minutes, Rakotojoelinandrasana was taken, in handcuffs, to the police station to wait for the FBI agents. He was placed in a secure interview room inside the station, handcuffs removed. Tabone brought him food and water. The room was locked but he was told to knock if he needed anything. The FBI agents arrived in about two hours. Rakotojoelinandrasana was taken to a different interview room off the lobby of the police station – a "soft" interview room with cushioned furniture, plants, and carpet. During the interview, the door to the lobby was unlocked, and he was not handcuffed. The FBI agents told him several times he was not in custody, not under arrest, and free to leave. The agents claim the interview was congenial, cooperative, and low-key. Rakotojoelinandrasana asked twice to terminate the interview, but the agents continued to talk. He was never given a Miranda warning. He volunteered to provide more dye-stained money and a BB gun from his car. The agents immediately produced a consent-to-search form. Reviewing it with him, they said he was not required to sign it. About five hours after the first interview at the casino, Rakotojoelinandrasana signed the consent form for the car.

Later in the interview, Rakotojoelinandrasana agreed to allow the agents to search his apartment. Not relying solely on that consent, the agents obtained a separate search warrant for the apartment, seizing a money wrapper and clothing.

Rakotojoelinandrasana moved: (1) to suppress statements, admissions, and proceedings; and (2) to suppress evidence obtained as a result of search and seizure. The district court suppressed his confession but none of the evidence seized from his car and apartment.

Factual determinations in a ruling on a motion to suppress are reviewed for clear error, and legal conclusions of law are reviewed de novo. *United States v. Villa-Gonzalez*, 623 F.3d 526, 531 (8th Cir. 2010). The "nontestimonial fruit" of a voluntary statement does not implicate the self-incrimination clause. *Id.* at 534-35; *United States v. Patane*, 542 U.S. 630, 641-43 (2004). Whether consent is voluntary is a factual question, reviewed for clear error. *United States v. Johnson*, 619 F.3d 910, 918 (8th Cir. 2010).

Rakotojoelinandrasana claims that his consents to search were involuntary. The voluntariness of consent depends on the totality of the circumstances, including law enforcement's conduct and a defendant's characteristics. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27, 233 (1973); *United States v. Quintero*, 648 F.3d 660, 669 (8th Cir. 2011). In determining voluntariness this circuit considers (1) the individual's age, intelligence and education; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was advised of a right to withhold consent or of the Miranda rights; and (4) whether the individual, through prior experience, was aware of protections the system provides suspected criminals. *Quintero*, 648 F.3d at 667; *Johnson*, 619 F.3d at 918. The court also considers the environment where the consent was obtained, including (1) length of detention; (2) whether the officers threatened, physically intimidated, or punished the individual; (3) whether the officers made any misrepresentations or promises; (4) whether the individual was in custody or under arrest; (5) whether the consent was given in public;

and (6) whether the individual objected to the search, or remained silent during it. *Quintero*, 648 F.3d at 667; *Johnson*, 619 F.3d at 918.

The district court here analyzed all the circumstances. Most important, Rakotojoelinandrasana signed a consent form that stated he had a right to refuse. *See United States v. Czeck*, 105 F.3d 1235, 1239 (8th Cir. 1997) (consent was voluntary based on age, sobriety, and criminal-justice experience, but the signed form was the most important factor). The district court determined that Rakotojoelinandrasana was in custody because he was detained for five hours in a private room at the casino and at the police station (neither one was public). Custodial status, however, is not determinative of the voluntariness of consent. *Id.* at 1239. The district court found Rakotojoelinandrasana was not threatened in any way. *See United States v. Comstock*, 531 F.3d 667, 678 (8th Cir. 2008) (statement to defendant, already handcuffed for two hours, that if he did not consent to search, officers would get a warrant and he would be handcuffed for two more hours, *found* not coercive). The agents wore street clothes, concealed their weapons, were mild-mannered and professional. *See United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (consent voluntary where officers did not raise their voices, draw guns, or otherwise coerce). Rakotojoelinandrasana was in college and fluent in English. *See United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (comprehension of English was sufficient to enable defendant to give informed, knowledgeable consent). After examining all the facts, the district court committed no clear error in determining Rakotojoelinandrasana's consents were voluntary.

\* \* \* \* \* \* \* \*

The judgment of the district court is affirmed.

_____